567 A.2d 1095

Michael J. HUDAK, Ann H. Hudak, Joseph Hudak, Deceased, David Hudak, Deceased and Michael Hudak, Deceased, Appellants,

v.

Farouk M. GEORGY, M.D., and Lyon, Cooper, Hipple, Georgy and Collins, P.C., Appellees.

Michael J. HUDAK, Ann H. Hudak, Joseph Hudak, Deceased, David Hudak, Deceased and Michael Hudak, Deceased, Appellants,

v.

Leonard COLLINS, M.D., Appellee.

Superior Court of Pennsylvania.

Argued Sept. 27, 1989.

Filed Dec. 13, 1989.

Petition for Allowance of Appeal Granted May 8, 1990.

Roberta D. Pichini, Philadelphia, for appellants.

Dennis Bonetti, Harrisburg, for appellees.

Before CIRILLO, President Judge, and BECK and JOHNSON, JJ.

PER CURIAM:

This case presents a single issue never before addressed by a Pennsylvania court. The issue is whether a Wrongful Death and Survival action will lie on behalf of a fetus which, although allegedly born alive, was concededly not viable at the time of birth. We hold that nothing in the law of Pennsylvania suggests that such a cause of action exists and we decline to create it on the ground that to do so would be to overstep the proper boundaries of the judicial function.

Appellants are Ann and Michael Hudak, who brought the instant medical malpractice action both as individuals and in their capacity as co-administrators of the estates of Joseph, David and Michael Hudak, three non-viable fetuses. Appellees are Drs. Georgy and Collins and the medical professional corporation with which they are associated, Lyon, Cooper, Hipple, Georgy & Collins, P.C.

Mrs. Hudak was under the care of appellees for infertility in the early 1980's. In early 1982, Mrs. Hudak became pregnant but shortly thereafter experienced a miscarriage. In late 1982, Mrs. Hudak was again found to be pregnant, this time with triplets. On the evening of April 10, 1983, Mrs. Hudak called defendants' answering service to alert them that she was experiencing cramping. On Dr. Georgy's advice, Mrs. Hudak went to the hospital where Dr. Collins was on duty. Dr. Collins began administering medication to Mrs. Hudak to stop her contractions. The treatment succeeded and Mrs. Hudak was transferred to another hospital where her treatment was administered by doctors

other than defendants. The next day, however, Mrs. Hudak's contractions recommenced. The triplet fetuses were delivered by caesarean section late that afternoon. Two of the fetuses were allegedly born alive, but died within minutes of birth. The third, also allegedly born alive, was placed on a respirator but died in the early morning hours of the next day.

Appellants allege that defendants were negligent in failing properly to treat Mrs. Hudak to stop her premature labor on the night of April 10th. They basically allege that defendants unduly delayed in treating Mrs. Hudak and that this delay resulted in the deaths of the fetuses.

In addition to the wrongful death and survival actions brought on behalf of the three fetuses, appellants also brought actions for negligence on their own behalf, alleging physical injuries to Mrs. Hudak and emotional distress to both Mr. and Mrs. Hudak as a result of the loss of the three fetuses. These actions are not at issue here.

Appellees sought to have the wrongful death and survival actions dismissed on the ground that Pennsylvania law does not recognize a cause of action for wrongful death and survival on behalf of a non-viable fetus. The parties stipulated on the record in the court below that the three fetuses involved herein were non-viable at the time of birth and that non-viable was to be understood to mean incapable of living outside the womb because of immaturity.

On February 9, 1988, the trial court issued an order granting defendant's motion to dismiss and entering judgment in their favor. Appellants took this timely appeal.

Determination of the issue presented depends upon interpretation of the Wrongful Death and Survival Acts, pursuant to which appellants brought the instant action. Nothing in the express language of either Act addresses this issue. The Wrongful Death Act simply provides that a cause of action exists "for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no action for damages was brought

by the injured individual during his lifetime." 42 Pa.Cons. Stat.Ann. § 8301 (1982). Reference to the Statutory Construction Act reveals that the word "individual", for whose death recovery is allowed, is defined to mean a "natural person". 1 Pa.Cons.Stat.Ann. § 1991 (1989). However, the phrase "natural person" is not defined. The Survival Act provides, in pertinent part, only that all causes of action shall survive the death of the plaintiff. *Id.* 42 Pa.Cons.Stat. Ann. § 8302.

Thus, the face of the statutes tells us nothing as to whether a non-viable fetus should be considered an individual on whose behalf a wrongful death action may be brought or whether a non-viable fetus is a plaintiff who had a cause of action which survives when the pregnancy terminates. Moreover, as the Supreme Court has indicated, "... the legislative history [of the Wrongful Death Act] ... reveals an *absence* of any indication regarding the proper resolution...." of issues like the one presented by this case. *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1985) (emphasis supplied).

In this vacuum of express statutory guidance or legislative history, we must look to prior judicial interpretations of the Acts to ascertain whether they are instructive. This search for authority is equally unfruitful. As the discussion that follows illustrates, there is no pronouncement of Pennsylvania law directly on the issue presented and those cases addressing related issues do not provide clear principles that can be applied in resolving the issue.

Two Supreme Court decisions regarding the right to recover for prenatal injuries are arguably pertinent to the issue presented. The first is the 1960 decision of the Supreme Court in *Sinkler v. Kneale*, 401 Pa. 267, 164 A.2d 93 (1960). The complaint alleged that the plaintiff's mother had been involved in a car accident when she was one month pregnant with the plaintiff and that injuries received by plaintiff at that time caused her to be born Mongoloid. *Id.* at 268, 164 A.2d at 93. The plaintiff was born a full term child.

The *Sinkler* Court reasoned that while it was formerly believed that a child en ventre sa mere was merely part of its mother's body until the moment of birth, this view was no longer supported by medical authorities. The Court further stated that the negligence cause of action should not be barred simply because the injuries were allegedly suffered while the child was not viable. *Id.*, 401 Pa. at 270, 273, 164 A.2d at 94, 95–96.

Appellant argues that under *Sinkler*, wrongful death and survival actions must be allowed in the instant case because it is alleged that the fetuses involved herein were born alive and that this fact is all that is required. We disagree. Since the injuries suffered by the plaintiff in *Sinkler* did not result in the plaintiff child's death, that case did not involve actions for wrongful death and survival. For the same reason, *Sinkler* did not involve the question of the significance of viability at birth which is raised by the instant case. The *Sinkler* Court's comments regarding viability were addressed to the significance of viability at the time of injury and are not *ipso facto* pertinent to a discussion of whether a cause of action for wrongful death and survival should lie on behalf of a fetus not viable at the time of birth.

The second pertinent decision of the Supreme Court is *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1985). In *Amadio*, plaintiff-parents alleged that the defendant doctors' negligence had caused the stillbirth of plaintiffs' daughter, who was a full term child at the time of birth. The trial court dismissed plaintiffs' wrongful death and survival actions, relying on prior Supreme Court holdings that wrongful death and survival actions did not lie on behalf of stillborn children. *See Scott v. Kopp*, 494 Pa. 487, 431 A.2d 959 (1981); *Marko v. Philadelphia Transportation Co.*, 420 Pa. 124, 216 A.2d 502 (1966); *Carroll v. Skloff*, 415 Pa. 47, 202 A.2d 9 (1964)[1].

1.  In each of these cases, the child involved was either clearly viable or the complaint alleged that the child was viable and the Court accepted that fact as true for purposes of determining whether a cause of action

The Supreme Court reversed after reanalyzing its prior holdings and expressly rejecting the reasoning on which they had been based. The court found that since *Sinkler* recognized a cause of action for negligence by a child born alive for injuries suffered by the child while in utero, it would be illogical to allow recovery to such a child and yet to deny recovery simply because the injuries received in utero resulted in the stillbirth of the child. Thus, the court overruled *Scott, Marko* and *Carroll,* holding that estates of stillborn children do have the right to institute wrongful death and survival actions for "death-dealing injuries suffered while en ventre sa mere." *Amadio,* 509 Pa. at 208, 501 A.2d at 1089. In so doing, the court aligned itself with the growing national trend toward allowing such actions on behalf of stillborn children. *Id.* 509 at 208, 501 A.2d at 1087 n. 3.

A careful examination of the *Amadio* majority opinion, coupled with a review of the lengthy concurrence authored by Justice Zappala and the various dissenting opinions, reveals that *Amadio* is not a decision by the Supreme Court on the issue presented in the instant case. Nor does *Amadio* impliedly command any particular result when applied to this case. The issue presented in *Amadio* concerned the availability of wrongful death and survival causes of action to the estates of full term, i.e. viable, but stillborn children. In granting these actions to such plaintiffs, the court eliminated the only prior barrier to such actions—the requirement of live birth. However, the court did not determine whether such actions would lie where another potential barrier to the action exists—that the plaintiff sues on behalf of a fetus that never achieved viability. As Justice Zappala was careful to point out:

> Because the Complaint in this case asserts that Jennifer [the Amadio child] was "viable" at the time the allegedly

for wrongful death and survival should be permitted. Thus, none of these cases can be construed to mean that, absent the stillbirth of the plaintiff, the cause of action would have been allowed despite non-viability at birth.

negligent conduct of the defendants caused her death, the questions involved in circumstances implicating "viability" in other ways must be left for another day.

*Id.*, 509 Pa. at 230 n. 7, 501 A.2d at 1101 n. 7 (Zappala, J., concurring).

Examination of the majority opinion substantiates Justice Zappala's statement. The majority did not decide whether non-viability would have barred the causes of action. Nor does the majority opinion instruct us as to how the Supreme Court would decide the issue before us if presented with it.

Nor do the remaining opinions in *Amadio* give us clear guidance. Chief Justice Nix, writing in dissent, opines that by his reading, "... the majority appears to assign this 'new cause of action' based upon the viability of the fetus." *Id.*, 509 Pa. at 236, 501 A.2d at 1104 (Nix, C.J., dissenting). In contrast, as noted above, Justice Zappala, who both joined the majority and separately concurred, stated that since the Amadio child was viable, *no* questions implicating viability under other circumstances were to be considered decided by *Amadio.*

This summary of the pertinent decisions reveals that we are in uncharted seas. We have no expressions of legislative intent on which to rely, nor do we have guidance from the Supreme Court. Given the nature of the issue before us, we conclude that it is up to the legislature to create the cause of action. In the absence of any expression of intent from the legislature or any analysis by our Supreme Court, we cannot decide that fetuses born prior to attaining viability should now be accorded the same rights that children who have attained viability have been accorded under the Wrongful Death and Survival Acts. As Chief Justice Nix wrote in his dissent to *Amadio:*

It is a cardinal principle that fundamental public policy should be ascertained and articulated through legislative fiat and not through judicial edict. For illustration, the majority appears to assign this "new cause of action" based upon the viability of the fetus. This option in favor

of viability as opposed to conception touches upon one of the most controversial questions of our day. Clearly, disputes of this nature cannot satisfactorily be resolved by court decisions.

*Id.,* 509 Pa. at 230, 501 A.2d at 1104 (Nix, C.J., dissenting). *See also Id.,* 509 Pa. at 237–238, 501 A.2d at 1105 (Hutchinson, J., dissenting) ( ... the majority incorrectly ventures into policy areas more properly left to the legislature....); *Toth v. Goree,* 65 Mich.App. 296, 237 N.W.2d 297 (1975) (court refuses to extend wrongful death right of action to stillborn non-viable fetus on ground that to do so would be usurpation of legislative function).

We, therefore, affirm the trial court's dismissal of appellants' wrongful death and survival actions.

JOHNSON, J., filed a concurring opinion.

JOHNSON, Judge, concurring.

I agree that the wrongful death and survival actions should have been dismissed. However, I would look to whether an injury had been alleged sufficient to support a cause of action prior to considering the viability of the fetus as an element of recovery.

These actions had been consolidated for trial prior to this appeal. The defendants had filed preliminary objections challenging the adequacy of the complaints with respect to the alleged negligence, injury and the specifics of each. In each case, the objections were overruled. I recognize that the earlier orders overruling the preliminary objections are interlocutory and not directly before us on this appeal. *Rosenwald v. Barbieri,* 501 Pa. 563, 462 A.2d 644 (1983). Nevertheless, we have been invited to review the order granting the defendants' motion to dismiss—final and appealable as to three of the named plaintiffs—upon the representation that this appeal may materially advance the ultimate termination of the matter, *see* Pa.R.A.P. 1312(a)(5).

Since I believe that the complaints fail to allege an injury cognizable in a trespass action, I would affirm the trial court without reaching the issue which my colleagues so ably have addressed.

The complaints filed at Nos. 83–02248 and 84–01045 in the trial court are virtually identical. Each Paragraph 8 avers:

8. As a result of the carelessness, negligence, gross negligence and recklessness of the defendant[s].... Joseph Hudak and David Hudak were caused to sustain injuries resulting in their deaths on April 11, 1983, and Michael Hudak was caused to sustain injuries which resulted in his death on April 12, 1983.

The only other reference to the alleged injuries to the fetuses appears in Paragraph 20, under Count III of each Complaint, where it is averred:

20. Solely by reason of the carelessness, negligence, gross negligence, and recklessness of defendant[s].... Joseph Hudak, deceased, David Hudak, deceased, and Michael Hudak, deceased, were born prematurely and sustained severe and disabling injuries which caused the deaths of Joseph and David Hudak on April 11, 1983, and the death of Michael Hudak on April 12, 1983, after each had undergone great pain and suffering.

A Joint Stipulation of Facts for Purpose of Appeal was filed by the parties on October 25, 1988. From this stipulation, we learn that Ann H. Hudak, the plaintiff/mother, had been treated by the defendants for infertility, that the "due date" for delivery of the triplets was August 1, 1983, and that the delivery by Caesarian section occurred on April 11, 1983. The parties further stipulated that the three fetuses, because of their immaturity, were not capable of living outside the womb.

The defendants propounded a first set of interrogatories to the plaintiffs. Interrogatories numbered 52, 57, 58, and 59 all sought information relating to the injuries allegedly sustained by the fetuses. Interrogatory No. 59 sets forth:

59. Describe separately and in detail all injuries sustained by the decedent as a result of the treatment, surgery or examination upon which this action is based. The Answer set forth immediately below the Interrogatory is:

See Williamsport Hospital and Geisinger Medical Records. Neither hospital records are attached to the Answers to Interrogatories or otherwise included in the certified record before this court.

To state a cause of action for negligence, the plaintiff must plead a legal duty, a breach of that duty, proximate or legal cause, and actual damage or injury. *Boyce v. United States Steel Corporation*, 446 Pa. 226, 285 A.2d 459 (1971); *Whitner v. Lojeski*, 437 Pa. 448, 263 A.2d 889 (1970); *Kirby v. Carlisle*, 178 Pa.Super. 389, 116 A.2d 220 (1955). An action for negligence lies only if injury or damage is caused thereby. *Jeloszewski v. Sloan*, 375 Pa. 360, 100 A.2d 480 (1953); *Kirby v. Carlisle, supra.*

I am unable to extract anything from the Complaints, Answers to Interrogatories, the Stipulation or other pleadings which would even remotely suggest any injury or trauma to any of the three fetuses as a direct result of any action, or failure to act, by the defendant obstetricians. In response to Interrogatory 2(a), requesting that the plaintiff/mother state in detail what injuries were sustained by her as a result of the treatment upon which this action was based, plaintiff Ann H. Hudak responded:

(a) When premature birth of the decedents was imminent, Ann underwent a Caesarian section to improve the chances for survival of the babies. This abdominal surgery resulted in pain, hospitalization, incapacitation, a long recuperative period and scarring.

There is absolutely no suggestion that the Caesarian section procedure was anything but normal, or that the fetuses suffered injury as a result of that procedure.

It is noteworthy that all of the cases reviewed by my distinguished colleagues involve prepartum trauma or injury alleged to have been sustained by the fetus while in the

womb of the mother. *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1985) (injuries received in the womb of the mother); *Scott v. Kopp,* 494 Pa. 487, 431 A.2d 959 (1981) (mother involved in head-on auto collision, fetus died *in utero*); *Marko v. Philadelphia Transportation Co.,* 420 Pa. 124, 216 A.2d 502 (1966) (electricity passed through body of mother, fetus killed while in womb of the mother); *Carroll v. Skloff,* 415 Pa. 47, 202 A.2d 9 (1964) (direct trauma inflicted by physician, fetus destroyed *in utero*); *Sinkler v. Kneale,* 401 Pa. 267, 164 A.2d 93 (1960) (mother involved in rear-end collision, fetus born Mongoloid).

Prior to this appeal, all of the cases dealt with the right of a child, or the estate of a child, to institute an action, often a survival and wrongful death action, for injuries suffered while in the womb of the mother. *Cf. Amadio v. Levin, supra,* 509 Pa. at 207, 501 A.2d at 1089, Opinion of the Court, Papadakos, J. None of the earlier cases presented the threshold issue which I discern on this appeal. Nor have the appellants referred this court to any cases in which, on similar facts, the issue of injury and damage was glossed over.

The parties have stipulated that the three fetuses, because of their immaturity, were not capable of living outside the womb. This being the case, I do not believe that the general allegation of negligence contained in Paragraph 20 of each Complaint is sufficient to plead a cause of action. I do not understand how the "severe and disabling injuries" referred to in Paragraph 20 could have "caused the deaths of Joseph and David Hudak ... and ... Michael Hudak", where such "injuries" are not further referred to anywhere in the Complaint and the parties have agreed that life was not possible outside the womb.

Since I reach the same conclusion as my esteemed colleagues which would affirm the order dismissing the survival and wrongful death actions, albeit by different reasoning, I concur in the result.