615 A.2d 382

Theresa McCASKILL and Theresa McCaskill, Administratrix of the Estate of Baby Boy McCaskill, Deceased and Theresa McCaskill & Charles R. Rone, Jr., in Their Own Right as Parents and Natural Guardians of Baby Boy McCaskill, Deceased, Appellants,

v.

PHILADELPHIA HOUSING AUTHORITY, Pennsylvania Municipal Corporation and City of Philadelphia and Philadelphia Electric Company, a Pennsylvania Corporation and Philadelphia Facilities Management Corporation, a Pennsylvania Corp. d/b/a Philadelphia Gas Works and Philadelphia Gas Works, a Business Entity.

Superior Court of Pennsylvania.

Submitted June 25, 1992.

Filed Oct. 21, 1992.

Alan I. Lourie, Asst. Public Defender, Philadelphia, for appellants.

Susan L. Claypoole, Medford, New Jersey, for appellees.

Before JOHNSON, FORD ELLIOTT and HOFFMAN, JJ.

JOHNSON, Judge:

Theresa McCaskill appeals the grant of preliminary objections in the nature of a demurrer in favor of the Philadelphia Housing Authority (PHA). We affirm.

McCaskill asserts two issues for our review: (1) whether a wrongful death and survival action can be maintained on behalf of a fetus which spontaneously aborted at seventeen weeks of gestational age and (2) whether an action for loss of consortium can be maintained by McCaskill, as a parent, for the loss of the fetus. We hold that no cause of action exists under the law of this Commonwealth which permits recovery under the Wrongful Death and Survival Acts for the loss of a non-viable fetus, nor do we recognize an action in loss of consortium for the parents of a non-viable fetus.

McCaskill was a resident of an apartment leased by the PHA to her sister Crystal McCaskill located at 2610 North 11th Street, Philadelphia. On May 14, 1989, a portion of that apartment building collapsed, which McCaskill alleges caused her to suffer severe and permanent injuries and, further, caused her to suffer the spontaneous abortion of a fetus of seventeen weeks gestation.

McCaskill filed a Complaint on June 17, 1991, against PHA, the City of Philadelphia, The Philadelphia Electric Company, and Philadelphia Gas Works seeking to recover on four counts. In Count I, McCaskill maintained that she suffered personal injuries, and property damage. In Count II, McCaskill alleged the wrongful death of her unborn child pursuant to 42

Pa.C.S. § 8301. In Count III, McCaskill asserted a survival action under 42 Pa.C.S. § 8302. Count IV alleged a claim for loss of consortium of the unborn child. PHA filed preliminary objections to McCaskill's complaint. Thereafter, McCaskill filed an Amended Complaint to which PHA renewed its preliminary objections. On October 9, 1991, the trial court sustained PHA's preliminary objections and dismissed Counts II, III, and IV of McCaskill's amended complaint, including all claims for loss of consortium. McCaskill filed a petition for reconsideration pertaining to the claims alleged against PHA, which the trial court denied. McCaskill now appeals the October 9, 1991 order of the trial court.

Our standard of review when addressing the propriety of the grant of a preliminary objection in the nature of a demurrer is well-established. A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. *Composition Roofers Local 30/30B v. Katz,* 398 Pa.Super. 564, 581 A.2d 607 (1990). It tests the legal sufficiency of the complaint as failing to set forth a cause of action upon which relief can be granted under any theory of law. *Sutton v. Miller,* 405 Pa.Super. 213, 592 A.2d 83 (1991). A preliminary objection in the nature of a demurrer may only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. *McGregor v. Mediq, Inc.,* 395 Pa.Super. 221, 576 A.2d 1123 (1990).

It is in light of this standard that we will address the claims put forth by McCaskill. First, McCaskill alleges that the law of this Commonwealth recognizes a valid cause of action for a non-viable fetus under the Wrongful Death and Survival Acts, 42 Pa.C.S. § 8301 and § 8302. We disagree.

McCaskill relies on *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1985), as controlling on this issue. This reliance is misplaced. In *Amadio,* our supreme court held that survival and wrongful death actions may be pursued by the estates of stillborn infants for fatal injuries received while viable children *en ventre sa mere. Id.,* 509 Pa. at 203, 501 A.2d at 1086–1087.

There, the court recognized a cause of action by the parents of a stillborn full-term infant. *Id.* As the fetus in that case had been viable, the issue of whether a cause of action may be sustained on behalf of a non-viable fetus was not before the court in *Amadio.*

This issue has, however, been addressed by this Court. In *Hudak v. Georgy,* 390 Pa.Super. 14, 567 A.2d 1095 (1989), *appeal granted,* 525 Pa. 600, 575 A.2d 566 (1990), we held that the Wrongful Death and Survival Acts did not create a cause of action for non-viable fetuses. There, the appellants attempted to bring a wrongful death and survival action on behalf of non-viable triplet sixteen week fetuses which died shortly after their premature birth. We found that in the absence of clearly expressed legislative or supreme court authority, we could not accord non-viable fetuses the same rights, under the Wrongful Death and Survival Acts, as children who had attained viability. *Id.*

In *Coveleski v. Bubnis,* 391 Pa.Super. 409, 571 A.2d 433 (1990), *appeal granted,* 525 Pa. 656, 582 A.2d 323 (1990), we were faced with a proposed wrongful death and survival action on behalf of a fetus of eight weeks gestational age. In that case, we aligned our holding with *Hudak* and the majority of jurisdictions and limited wrongful death and survival actions on behalf of the unborn only to those brought on behalf of viable fetuses. *Id.* 391 Pa.Super. at 414, 571 A.2d at 435. There, we stated that before viability any determination of damages for death of a fetus would be entirely speculative. *Id.*

In the present case, the fetus was in the seventeenth week of gestation at the time that the events in question occurred. While McCaskill, in her amended complaint, alleged that the fetus was "viable or possibly viable," the trial court found McCaskill's allegations of viability to be unsupportable. Viability is that stage of prenatal development at which the fetus would be capable of independent existence if removed from its mother's womb. *Coveleski,* 391 Pa.Super. at 413, 571 A.2d at 435. The United States Supreme Court recently held that viability now occurs at 23 or 24 weeks of

gestation. *Planned Parenthood v. Casey*, 505 U.S. ——, ——, 112 S.Ct. 2791, 2810–11, 120 L.Ed.2d 674 (1992). *See also Webster v. Reproductive Health Services*, 492 U.S. 490, 515, 109 S.Ct. 3040, 3055, 106 L.Ed.2d 410, 434 (1989). The legal conclusion that viability occurs at 23–24 weeks is well supported in the medical literature. *See e.g.* Hack, M., and Fanaroff, A., *Outcomes of Extremely Low Birth Weight Infants*, 321 New Eng.J.Med. 1642 (1989); Gerdes, et al., *Improved Survival and Short-term Outcome of Inborn "Micropremies"*, 25 Clinical Pediatrics 391, 393 (1986); Pleasure, et al, *What is the Lower Limit for Viability?* 138 Am.J.Dis.Child. 783 (1984).

McCaskill, on appeal, rather than continuing to assert that the fetus was viable, contends that "the life of each human being begins at conception" and urges this court to adopt the holding of the Supreme Court of Rhode Island in *Presley v. Newport Hospital*, 117 R.I. 177, 365 A.2d 748 (1976). *See* Brief for Appellant at 10–11. The state of Rhode Island distinguished itself, in *Presley*, as the only state in the Union to recognize a cause of action in wrongful death for fetuses at any stage of gestational development. *Id.* We decline to accept McCaskill's invitation to disregard the precedential authority of this jurisdiction. Therefore, we hold that the trial court properly found that the fetus in question was not viable and that no cause of action may be maintained in wrongful death and survival on behalf of a non-viable fetus.

█ We now turn to the second issue presented in this appeal: whether parents of a fetus can maintain a cause of action for the loss of consortium of their potential child. While McCaskill recognizes that claims for the loss of filial consortium have never been recognized in this jurisdiction, she urges this Court to abandon the established common-law and grant her recovery on this claim. We decline to do so.

In *Quinn v. City of Pittsburgh*, 243 Pa. 521, 90 A. 353 (1914), our supreme court stated that claims for loss of consortium are limited to spouses and do not extend to the loss of a child's consortium. This rule has remained undisturbed as the law of this jurisdiction. *See e.g. Schroeder v. Ear, Nose and*

*Throat Assoc.*, 383 Pa.Super. 440, 557 A.2d 21 (1989), *appeal denied*, 523 Pa. 650, 567 A.2d 653 (1989); *Brower by Brower v. City of Philadelphia*, 124 Pa.Cmwlth. 586, 557 A.2d 48 (1989), *appeal denied*, 525 Pa. 604, 575 A.2d 569 (1990).

In *Schroeder*, the appellants were the parents of a fetus which was aborted during the course of medical treatment for the mother. There, holding that the appellants had put forth no cause of action we stated:

> We conclude that because there is no constitutional mandate compelling us to recognize a cause of action for loss of filial consortium, because there is presently no legal basis for allowing the cause of action, because there is no general or growing consensus that such a cause of action should be established, and because to allow such a cause of action is a policy determination which can most thoroughly and representatively be considered by the legislature, we do not recognize a parent's cause of action for loss of a child's consortium due to tortious interference of a third party.

*Id.*, 124 Pa.Cmwlth. at 444–445, 557 A.2d at 23, *paraphrasing Steiner by Steiner v. Bell Telephone Co.*, 358 Pa.Super. 505, 522, 517 A.2d 1348, 1357 (1986), *aff'd*, 518 Pa. 57, 540 A.2d 266 (1988).

As an intermediate appellate court, we will not recognize this cause of action where there is clear and binding precedent to the contrary. *Quinn, supra.* We, therefore, hold that the trial court properly sustained the preliminary objections by the Philadelphia Housing Authority, and dismissed McCaskill's claim for the loss of filial consortium.

Accordingly, for the foregoing reasons, we affirm the order of the trial court.

Order Affirmed.

FORD ELLIOTT, J., files a dissenting statement.

FORD ELLIOTT, Judge, dissenting:

I respectfully dissent to the majority's decision in two respects. Initially, I believe under the authority of 42 Pa. C.S.A. § 762 and 42 Pa.C.S. § 8541–8564, jurisdiction over this appeal more properly rests in Commonwealth Court. In

*Battle v. Philadelphia Housing Authority,* 406 Pa.Super. 578, 594 A.2d 769 (1991), this court determined that the PHA was in fact a local agency covered by the provisions of the Political Subdivision Tort Claims Act. This court has previously determined that Commonwealth Court is vested with exclusive jurisdiction over an appeal involving parties under the Act. In *Brady v. West Manchester Township Sewer Authority,* 338 Pa.Super. 144, 487 A.2d 894 (1985), transferred to 97 Pa. Cmwlth. 31, 508 A.2d 1287 (1986), *allocatur denied,* 514 Pa. 649, 524 A.2d 495 (1987), we stated at footnote 1:

Subsection 762(a)(7) of the Judicial Code was amended on December 20, 1982 pursuant to P.L. 1409, No. 326, art. II, § 201, effective in 60 days. The prior language of subsection 762(a)(7) is as follows:

§ 762. *Appeals from court of common pleas*

(a) General rule. Except as provided in subsection (b), the Commonwealth Court shall have exclusive jurisdiction of appeal from final orders of the courts of common pleas in the following cases:

(7) Immunity waiver matters. Matters in which immunity has been waived pursuant to Subchapter C of Chapter 85 (relating to actions against local parties).

A reading of the above cited prior language of subsection 762(a)(7) reveals that it was much narrower than the present language. Under the prior language the local agency immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. 8541, *et seq.,* would have to be waived before the appellate jurisdiction of the Commonwealth [C]ourt would be invoked. However, under the present language all that is necessary is that a local agency be sued in tort which then invokes Commonwealth Court's appellate jurisdiction since the case will be governed by the provisions of the Tort Claims Act. Thus, the Commonwealth Court's appellate jurisdiction in tort actions in which at least one party is a local agency is now exclusive.

Although I recognize that from time to time in cases of concurrent appellate jurisdiction various panels of this court have not transferred such appeals *sua sponte* citing either the

failure of a party to raise the issue, *Wilson v. School District of Philadelphia*, 410 Pa.Super. 416, 600 A.2d 210 (1991), and *Flaxman v. Burnett*, 393 Pa.Super. 520, 574 A.2d 1061 (1990), or the interests of judicial economy, *Brady, supra*, I cannot agree that such policies serve the best interests of the parties or the ends of justice. I believe that in cases where the general assembly has reserved specifically *exclusive* jurisdiction over a class of appeals to the Commonwealth Court, such transfers should not be discretionary and this court should defer to this legislative determination.

I dissent to the majority's resolution of this case on the merits as well. Although in doing so I recognize that the precedent cited by the majority in the *Hudak, supra*, and *Coveleski, supra*, decisions quite rightly support the result reached. For my part, I concur in the views expressed by my colleague Judge Olszewski in his Dissenting Opinion in *Coveleski*. Upon a thorough reading of *Amadio, supra*, I cannot find that the supreme court established viability as the point in time when a cause of action may arise for the death of a fetus. I believe Judge Olszewski's interpretation of the holding in *Amadio* more correctly reflects what was intended by the supreme court.