**Lisa Bishop QUINN, Administratrix of the Estate of Larry T. Quinn, Deceased, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.**

**Lisa Bishop QUINN, Administratrix of the Estate of Larry T. Quinn, Deceased**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1998.

Decided Sept. 14, 1998.

Philip A. Ignelzi, Pittsburgh, for appellant.

Brian H. Baxter, Pittsburgh, for appellee.

Before McGINLEY and SMITH, JJ., and NARICK, Senior Judge.

SMITH, Judge.

This matter involves cross-appeals from an order of the Court of Common Pleas of Allegheny County denying both parties' post-trial motions following a jury trial on the wrongful death and survival actions of Lisa Bishop Quinn (Quinn), administratrix of the estate of Larry T. Quinn, deceased, against the Department of Transportation (DOT). Quinn questions whether the trial court abused its discretion by failing to grant her motion for a new trial on damages. DOT questions whether judgment notwithstanding the verdict should be entered or a new trial awarded so that the jury could hear evidence that the deceased was an unlicensed driver operating an unregistered automobile with an expired inspection sticker. It questions also whether the $100,000 portion of the verdict representing loss of services of the deceased father to his unborn child should be overturned.

The claims arose out of a fatal automobile accident on May 26, 1991 in which decedent lost control of the car he was driving while on an exit ramp from the Fort Pitt Bridge to Interstate 376 in Pittsburgh. When his vehicle struck the barrier it was launched over the guardrail and fell some 50 feet to the Monangahela Wharf parking area and then slid into the river. As the trial court noted, the evidence at trial showed that the guardrail was positioned incorrectly and that DOT had been aware of this for approximately 20 years. The evidence also showed, however, that decedent had consumed about 14 beers that day and had an elevated blood alcohol level, that he entered the ramp at roughly 50 miles per hour although the advisory speed limit was 25 miles per hour and that he had navigated the ramp before on a daily basis. The trial court excluded DOT's proffered evidence that decedent was unlicensed and that the car he was driving was not registered or inspected. Quinn offered expert testimony of decedent's projected earnings and economic benefits to the household, which resulted in a net economic loss of $728,256.

After deliberating over a period of three days, the jury ultimately found in favor of Quinn but apportioned responsibility for the accident 50 percent to DOT and 50 percent to decedent. It awarded damages of $250,000: $100,000 on behalf of decedent's minor child Larry Shane Quinn, who was born after decedent's death; $100,000 for all other damages recoverable under the Act commonly known as the Wrongful Death Act, Section 8301 of the Judicial Code, *as amended*, 42 Pa.C.S. § 8301; and $50,000 for the action pursuant to the Act commonly known as the Survival Act, Section 8302, 42 Pa.C.S. § 8302. The trial court reduced the award by half to reflect the 50 percent responsibility of decedent and then assessed delay damages of $18,287.67.

## I

Quinn argues at No. 2528 C.D.1997 that a new trial is warranted on the issue of damages under the Supreme Court's decision in *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1 (1994). In that case a young woman passenger was fatally injured in an alcohol-related automobile accident. At trial only the plaintiffs presented evidence on the issue of damages. The lowest figure supported by the evidence was $232,000, but the jury awarded only $25,000. The Supreme Court recited the principles that apply when a low verdict is not viewed as a compromise. A jury verdict will be set aside as inadequate when it appears to have been the product of passion, prejudice, partiality or corruption or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable resemblance to the loss suffered. *Kiser* (citing *Elza v. Chovan*, 396 Pa. 112, 152 A.2d 238 (1959)).

The Supreme Court, however, also discussed the concept of a permissible "compromise verdict," explaining that it is one "where the jury, in doubt as to the defendant's negligence or the plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would have if these questions had been free from doubt." *Kiser*, 538 Pa. at 233, 648 A.2d at 8. The Supreme Court concluded in *Kiser* that the verdict clearly was not a compromise, where the jury found that the negligence of the victim was not a substantial factor in causing the loss and apportioned liability 60 percent/20 percent/20 percent among three de-

fendants and completely exonerated others. Moreover, a compromise verdict is not intended to be "adequate" in the sense of being reasonably related to the damages that were proven. *Hill v. Commonwealth, Bureau of Corrections,* 124 Pa.Cmwlth. 172, 555 A.2d 1362 (1989).

▐ In the present case, the trial court concluded that the jury reached a compromise verdict because the conflicting character of the evidence suggested different and potentially incompatible factors as the legal cause of harm so that the questions of negligence and contributory negligence were not free from doubt. Quinn asserts that the verdict of 50 percent responsibility for both parties is just what the evidence of the conflicting factors warranted; therefore it did not reflect doubt. The apportionment addressed any doubts the jury might have entertained concerning liability. She alleges that the verdict reflects DOT's counsel's inflammatory comments concerning drinking and driving rather than compromise.

▐ Quinn also cites *Deitrick v. Karnes,* 329 Pa.Super. 372, 478 A.2d 835 (1984), where a finding of 50 percent negligence on the part of a plaintiff did not insulate an award from review. There a passenger suffered a serious back injury in a boating mishap. After apportioning 50 percent responsibility to the plaintiff, the jury awarded him only $500, and it awarded nothing on his spouse's claim for loss of consortium, as to which no contrary evidence had been introduced. The court's conscience was shocked and it ordered a new trial. *Dietrick,* however, does not bar application of the principle of compromise verdicts where appropriate. In view of the strong evidence of contributory negligence, the close margin by which recovery was awarded and the length of the jury's deliberations, this Court cannot conclude that the trial court abused its discretion by deciding that a permissible compromise explained the jury's verdict. The grant of a new trial is a matter within the discretion of the trial court, and the court's decision will be reversed only if it abused its discretion. *Kiser.*

## II

▐ The Court turns next to DOT's arguments at No. 1970 C.D.1997. DOT's first contention is that the trial court erred by granting Quinn's motion in limine to exclude evidence that decedent's driver's license was suspended due to a previous speeding conviction, that the license plates on the car he was driving had been switched from another car and that the inspection sticker on the vehicle had expired.[1] On this point the trial court noted in its opinion that evidence must be relevant. However, even relevant evidence may be excluded upon the trial court's determination that its probative value is substantially outweighed by the danger of unfair prejudice, meaning an undue tendency to suggest a decision on an improper basis, or that it will confuse or mislead the jury. *Sprague v. Walter,* 441 Pa.Super. 1, 656 A.2d 890 (1995), *appeals denied,* 543 Pa. 695, 670 A.2d 142, *and* 543 Pa. 730, 673 A.2d 336 (1996). The trial court concluded that the facts sought to be excluded did not logically or reasonably tend to prove or disprove that decedent's conduct at the time and place of the mishap was contributorily negligent and that any slight probative value would most assuredly be outweighed by prejudice to Quinn's case.

▐ DOT notes that permission to operate motor vehicles on Commonwealth highways is a privilege subject to such conditions as the legislature may see fit to impose, *Department of Transportation v. Wysocki,* 517 Pa. 175, 535 A.2d 77 (1987), including the general requirement that no person shall operate a vehicle upon a highway or public property

---

1. The trial court denied Quinn's motion to strike an expert engineering report making calculations for a vehicle traveling at 25 miles per hour in accordance with the "advisory speed limit" at the ramp, when two state troopers had testified in depositions that the speed limit was 50 miles per hour; to exclude evidence of decedent's intoxication as irrelevant in view of the admission that his car left the roadway and struck the barrier; and to exclude evidence of a lack or prior accidents at that site. Rulings of a trial court upon the admission or exclusion of evidence are within the trial court's discretion; they will not be disturbed on appeal absent a clear indication of abuse of discretion. *Milan v. Commonwealth, Department of Transportation,* 153 Pa.Cmwlth. 276, 620 A.2d 721, *appeal denied,* 535 Pa. 650, 633 A.2d 154 (1993).

unless he or she has a valid driver's license. Section 1501(a) of the Vehicle Code, *as amended,* 75 Pa.C.S. § 1501(a). DOT asserts that the Supreme Court stated in *Bendas v. Township of White Deer,* 531 Pa. 180, 611 A.2d 1184 (1992), that DOT has a duty to make its highways reasonably safe for their intended purpose, which DOT maintains does not include use by unlicensed drivers. From this DOT concludes that it owed no duty to decedent. DOT further asserts that approving liability here would place an intolerable burden on the State to serve as an insurer for those who knowingly break the law and are injured as a result.

 DOT contends that because of the illegal nature of decedent's driving any duty owed to him was only that owed by an owner of land to a trespasser. That standard of care is the avoidance of willful or wanton misconduct. *Dudley v. USX Corp.,* 414 Pa.Super. 160, 606 A.2d 916 (citing *Evans v. Philadelphia Transp. Co.,* 418 Pa. 567, 212 A.2d 440 (1965)), *appeal denied,* 532 Pa. 663, 616 A.2d 985 (1992). DOT notes that Section 8522(a) of the Judicial Code, 42 Pa.C.S. § 8522(a), imposes liability for damages arising out of a negligent act, not a willful or wanton act. The statute is to be construed strictly, *Davidow v. Anderson,* 83 Pa. Cmwlth. 86, 476 A.2d 998 (1984). Because willful or wanton misconduct is recognized to be different in character from negligent conduct, DOT contends that it may not be held liable under any of the exceptions to immunity found in Section 8522(b) of the Judicial Code, *as amended,* 42 Pa.C.S. § 8522(b).

The Court observes that the Supreme Court in *Bendas* actually quoted *Snyder v. Harmon,* 522 Pa. 424, 435, 562 A.2d 307, 312 (1989), stating that the duty of care that a Commonwealth agency owes to those using its real estate is "to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." Quinn notes that where an owner of land has reason to expect people to trespass, it is held to a higher duty of care, closer to that owed to a licensee, citing *Oswald v. Hausman,* 378 Pa.Super. 245, 548 A.2d 594 (1988). She contends that it is foreseeable that some

motorists will operate without a proper license, registration or inspection. The Court agrees. There is no statutory provision, and DOT has cited no case directly on point, stating that if a motorist is operating without proper authorization then DOT's general duty to provide safe highways ceases to apply.

### III

DOT also contends that the portion of the jury's award for Larry Shane Quinn should be reversed. It notes that Section 8528 of the Judicial Code, 42 Pa.C.S. § 8528, specifies the items of damage recoverable from a state agency: past and future loss of earnings and earning capacity; pain and suffering; medical and dental expenses; "[l]oss of consortium;" and property losses. Line 6A of the jury verdict form authorized recovery of "an amount awarded for loss of services that the decedent, as his father, would have contributed to his child, Larry Shane Quinn, for such services as guidance, tutelage, and moral upbringing." Certified Record, Item 44. DOT contends that this item of damages in effect creates a new cause of action for loss of consortium by a child. Claims for loss of consortium, however, long have been limited to spouses only. The Superior Court reaffirmed this principle in *Schroeder v. Ear, Nose and Throat Assocs. of Lehigh Valley, Inc.,* 383 Pa.Super. 440, 557 A.2d 21, *appeal denied,* 523 Pa. 650, 567 A.2d 653 (1989), holding that a daughter's claim for loss of services resulting from her mother's non-fatal injury did not state a cause of action, and in *McCaskill v. Philadelphia Housing Authority,* 419 Pa.Super. 313, 615 A.2d 382 (1992).

Quinn responds that this case does not involve a claim for loss of consortium by a child, but rather it involves the relation between the sovereign immunity provisions and the Wrongful Death Act, which is a matter that this Court has already addressed. The Court en banc in *Huda v. Kirk,* 122 Pa. Cmwlth. 129, 551 A.2d 637 (1988), *appeals denied,* 524 Pa. 613, 569 A.2d 1371, *and sub nom. Petition of Commonwealth, Department of Transportation,* 524 Pa. 612, 569 A.2d 1370 (1989), overruled a panel's earlier

decision and concluded that a limited action under the Wrongful Death Act could be maintained against the Commonwealth. There a father and children filed wrongful death and survival actions for the death of the wife and mother. In discussing the damages that are recoverable under the Wrongful Death Act and the Survival Act, the Court stated: "Of the damages sought by the plaintiffs under their wrongful death action, they may recover for the loss of the value of decedent's services, the loss of decedent's comfort and society and any contributions decedent would have made to the plaintiffs from her income." *Id.,* 551 A.2d at 639.

■ The Court takes note that the Pennsylvania Supreme Court addressed the question of whether an award of $2,500,000 for the wrongful death of a wife and mother was excessive in *Tulewicz v. Southeastern Pennsylvania Transportation Authority,* 529 Pa. 584, 606 A.2d 425 (1991), *remanded on reh'g,* 529 Pa. 588, 606 A.2d 427 (1992). The Supreme Court affirmed the award, stating that the jury was not obliged to accept the figure of $356,929 offered by the plaintiff's expert as the value of the decedent's lost earning capacity, past and future home services and the loss of guidance, tutelage and general upbringing of her daughter. Accordingly, this Court concludes that an item of damages such as that claimed here for loss to a child of such services as guidance, tutelage and moral upbringing is recoverable, not under a general theory of loss of parental consortium, but as part of the damages that have been held to be recoverable under the Wrongful Death Act.

## IV

■ Nevertheless, DOT argues that Larry Shane Quinn may not recover at all in this case because he was not born at the time of his father's death but rather was in the sixteenth week of gestation, a stage at which he would not have been viable outside the womb.[2] DOT relies upon *McCaskill,* where

the plaintiff was a pregnant woman who was injured when a housing authority's building collapsed. In addition to her own injuries, she claimed losses for wrongful death, survival and loss of consortium for the spontaneous abortion of her 17–week–old fetus. The Superior Court affirmed the sustaining of a demurrer on these claims, noting that the courts had limited wrongful death actions only to fetuses that were deemed to be viable and that the date of viability had been held to be no earlier than 23 weeks of gestation. DOT cites no case to justify denying recovery to a natural child of a decedent.

Subsection (b) of the Wrongful Death Act, 42 Pa.C.S. § 8301(b), provides:

> Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of the Commonwealth.

The Wrongful Death Act therefore incorporates by reference the rules of intestate succession found elsewhere in the statutes and thus may be construed in pari materia with the rules of descent found in Section 2104 of the Intestate Succession Code, *as amended,* 20 Pa.C.S. § 2104. Section 2104(4) provides: **"After-born persons; time of determining relationships.**—Persons begotten before the decedent's death but born thereafter, shall take as if they had been born in his lifetime." Although cases such as *Hodge v. Loveland,* 456 Pa.Super. 188, 690 A.2d 243 (1997), *appeal denied,* —— Pa. ——, —— A.2d —— (No. 176 E.D. Alloc. Dkt.1997, filed March 5, 1998), state the principle that the right to compensation or recovery under the Wrongful Death Act vests at the time of the death,

---

**2.** Quinn argues that DOT waived this argument by failing to raise it before the close of the record and so depriving her of the opportunity to present evidence. The Court notes that the only facts that appear to relate to this contention are the date of death of the father and the stage of

gestation at that time of the after-born child; Quinn does not assert what else she could have proved that would have been relevant. With those matters established at trial, the rest was purely legal argument. The Court concludes that this issue was not waived.

the nature of that right is to be determined under the rules of intestate succession.

The case of *McCaskill* upon which DOT relies does not apply here. In cases addressing recovery for the death of a fetus, the courts must first determine whether there was a legal person capable of suffering an injury, applying the rule that a fetus is not a person for that purpose until it is viable. As the trial court noted, however, that principle is simply inapplicable to the circumstances of this case, where there is no claim based upon injury to a fetus. Therefore, whether the fetus that became Larry Shane Quinn was viable at the time of his father's death is irrelevant. As an after-born son of his deceased father, Larry Shane Quinn should be treated as if born before his father's death and, as a result, possessed of full rights of recovery allowed under the Wrongful Death Act. Having concluded that the trial court committed no abuse of discretion or error of law in its ruling upon the various post-trial motions presented to it, the Court therefore affirms the trial court's order.

### ORDER

AND NOW, this 14th day of September, 1998, the order of the Court of Common Pleas of Allegheny County is affirmed.