**Thomas v. SmithKline Beecham Corp.**

280

*Mark S. Karpo,* for plaintiff.

*Joseph E. O'neil,* for defendant.

MOSS, *J.,* November 9, 2012—Plaintiff, JoAnne Thomas, individually and as parent and natural guardian of Ryan Swindle, appeals this court's order dated July 17, 2012, and docketed July 19, 2012, granting defendant, SmithKline Beecham Corporation ("GSK"), summary judgment based on non-viability of the fetus and applicable statute of limitations. For the following reasons, our order should be affirmed.

## I. BACKGROUND

The facts in a light most favorable to plaintiff follow. Plaintiff, JoAnne Thomas, instituted this action by writ of summons on September 25, 2007. On November 27, 2007, plaintiff filed a short-form complaint. Plaintiff was allegedly taking a 40mg dose of Paxil (Paroxetine) throughout her pregnancy with Ryan Swindle in 2001. See defendant's motion, 3/22/12, p.3. At the time, Paxil was classified as a category C drug by the FDA drug use in pregnancy ratings. See *"Understanding Antidepressant Medications," U.S. Food and Drug Administration: Consumer Health Info, January 9, 2009,* available at http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm095980.htm (last visited Oct. 12, 2012). In December 2005, the FDA reclassified Paxil from a pregnancy risk category of C to D. *Id.* See also, U.S. food and drug administration, *FDA Advising of Risk of Birth Defects With Paxil, Agency Requiring Updated Product Labeling, December 8, 2005,* available at http://www.fda.gov/

NewsEvents/Newsroom/PressAnnouncements/2005/ ucm108527.htm (last visited Oct. 12, 2012). "With a *Category C* drug, fetal risk cannot be ruled out. With a *Category D* drug, positive evidence of fetal risks exists. FDA chooses a medicine's letter category based on what is known about the medicine when used in pregnant women and animals." *Id.*

In plaintiff's last echocardiogram performed on April 23, 2001, the pediatric cardiologist estimated fetal gestational age to be 22 1/2 weeks, and notified her of baby's congenital heart defects. See plaintiff's response, exhibit 1, fetal echocardiogram report (4/23/01). What caused said fetal abnormalities was unknown and the doctor suggested a following up in 5-6 weeks. *Id.* On April 26, 2001, 3 days later, plaintiff voluntarily chose a therapeutic abortion. See defendant's motion, exhibit 2, fetal death certificate. The fetal death certificate estimated gestational age to be 21 1/2 weeks. *Id.*

On March 8, 2007, nearly six years later, while plaintiff was studying for her nursing boards, she contacted a consumer line on GSK's website and spoke with a customer service representative who incorrectly told her Paxil was a "category C" drug. See defendant's reply, exhibit 2, Amended pregnancy fact sheet (12/9/10). With further investigation, plaintiff discovered Paxil had moved from a category C to D drug. See *"Understanding Antidepressant Medications," U.S. Food and Drug Administration: Consumer Health Info. (2009).* The representative later confirmed Paxil had been relabeled a category D drug. See plaintiff's response, exhibit 2, affidavit of JoAnne Thomas (4/20/12). Plaintiff then filed her short form complaint November 27, 2007, alleging her

Paxil ingestion during pregnancy caused her son, Ryan Swindle's wrongful death. Defendant's motion, exhibit 1, short form complaint, ¶6 (11/27/07).

On March 22, 2012, GSK moved for summary judgment. GSK argued plaintiff's claims should be dismissed for two fundamental reasons. First, plaintiff cannot bring a wrongful death or survival action because her fetus was not viable at her therapeutic abortion.[1] See defendant's motion, p.2. GSK argues as a matter of law there must be either (1) a child born alive; or (2) a viable fetus, capable of an independent existence at death. See *Coveleski v. Bubnis*, 535 Pa. 166, 172, 634 A.2d 608, 610 (1993). Under Pennsylvania law, viability occurs no earlier than 23 weeks gestational age. See *McCaskill v. Phila. Housing Auth.*, 615 A.2d 382, 384 (Pa. Super. Ct. 1992) (following the U.S. Supreme Court's holding in *Planned Parenthood v. Casey*, 505 U.S. 833, 860 (1992), that viability occurs at 23 to 24 weeks). Relying on plaintiff's fetal death certificate, GSK argued she cannot sustain a wrongful death or survival action because she at 21 1/2 weeks, before viability occurred. See defendant's motion, exhibit 2, fetal death certificate.

Next, GSK argued even if the fetus was viable when aborted, any claim would be barred under Pennsylvania's two year statute of limitations because plaintiff filed her action November 27, 2007, more than 6 years its death. GSK contends the two-year period commenced on the day

---

1. Pennsylvania law has held that "no cause of action exists under the law of this Commonwealth which permits recovery under the wrongful death and survival acts for the loss of a non-viable fetus, nor do we recognize an action in loss of consortium for the parents of a non-viable fetus." See *McCaskill v. Phila. Housing Auth.*, 615 A.2d 382, 383 (Pa. Super. Ct. 1992).

Ryan Swindle died, regardless of when survivors knew, or should have known, cause of death. See defendant's motion, p.4.

Plaintiff answered April 23, 2012, arguing at time of death, fetal gestational age was approximately 23 weeks, which is the viability threshold Pennsylvania courts recognize. See plaintiff's response, p.4. Three days before Ryan Swindle died, a pediatric cardiologist estimated fetal gestational age at 22 1/2 weeks. See plaintiff's response, Exhibit 1, fetal echocardiogram report (4/23/01). Plaintiff argued if viability threshold is 23 weeks, the echocardiogram report creates a genuine issue of fact as to whether Ryan Swindle was viable when aborted. Plaintiff also argues said statute should be equitably tolled under the doctrine of fraudulent concealment. Plaintiff argued GSK's safety misrepresentations hindered her ability to discover what caused the birth defects prior and subsequent to said abortion. See plaintiff's response, p.5. Plaintiff asserts whether GSK fraudulently concealed pregnancy risks associated with Paxil is a jury question. *Id.*

Defendant replied on April 30, 2012, reiterating plaintiff cannot bring a wrongful death or survival action because the fetus was not viable as a matter of law. See defendant's reply, p. 2. Even if plaintiff was 22 1/2 weeks pregnant three days before the abortion, her claim she was "approximately" 23 weeks is simply not enough to establish viability under Pennsylvania's bright-line rule. See defendant's reply, executive summary. Plaintiff elected to terminate her pregnancy just prior to the critical point when viability occurs. *Id.*

GSK further argued plaintiff fails to establish fraudulent

concealment and largely repeats her overarching "failure to warn claims" rather than establishing evidence that GSK committed "an affirmative, independent act of concealment directed towards plaintiff upon which she justifiably relied." See defendant's reply, p.3. Plaintiff cannot establish any specific "act" of GSK caused her to relax vigilance or deviate from inquiring. *Id.* The only potentially responsive argument plaintiff makes is she allegedly called the GSK consumer response center in March 2007. However, the statute had already expired by the time she allegedly called. See defendant's reply, p.4.

After careful consideration, on July 17, 2012 we granted GSK summary judgment and dismissed plaintiff's claims.

Plaintiff timely appealed on August 15, 2012 and filed her 1925 (b) statement of matters on September 10, 2012. Plaintiff raises the following:

The trial court, in granting [GSK's] motion for summary judgment, erred by:

a. Concluding that there was no genuine issue of material fact as to whether decedent Ryan Swindle was viable; and

b. In ruling that the statute of limitations bars the plaintiff's claims.

## II. DISCUSSION

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law." Pa.R.C.P. 1035.2. "[W]here there is no genuine

issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered." See *Bell v. Dean*, 5 A.3d 266, 268 (Pa. Super. Ct. 2010). "Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." *Id.* "[A] record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury." See *Lineberger v. Wyeth*, 894 A.2d 141, 146 (Pa. Super. Ct. 2006). "As with all summary judgment cases, the court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party as to the existence of a triable issue." See *Grandelli v. Methodist Hosp.*, 777 A.2d 1138, 1145 (Pa. Super. Ct. 2001). "A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion." See *Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 590, 777 A.2d 418, 429 (2001).

After considering arguments and reviewing the record in a light most favorable to plaintiff, we conclude she failed to carry her burden and summary judgment was warranted.

Plaintiff cannot sustain a wrongful death or survival action because the fetus was not viable as a matter of law when aborted. The U.S. Supreme Court held a fetus' viability occurs at 23 or 24 weeks gestational age. See *Planned Parenthood v. Casey*, 505 U.S. 833, 860 (1992). The Pennsylvania Supreme Court has followed suit. See

*McCaskill v. Phila. Housing Auth.*, 615 A.2d 382, 384 (Pa. Super. Ct. 1992) (holding viability occurs at 23 to 24 weeks). In *McCaskill*, plaintiff suffered a spontaneous abortion at seventeen weeks gestational age after a portion of her apartment building collapsed. Plaintiff filed a complaint seeking to recover for her child's wrongful death, a survival action and loss of consortium. See *McCaskill*, 615 A.2d at 383, (419 Pa. Super. 1992). The court held "The United States Supreme Court recently held that viability occurs at 23 or 24 weeks gestation" and that "the legal conclusion that viability occurs at 23-24 weeks is well supported in the medical literature." *Id.* (internal citations omitted). "We decline to accept McCaskill's invitation to disregard the precedential authority of this jurisdiction. Therefore, we hold that the trial court properly found that the fetus in question was not viable and that no cause of action may be maintained in wrongful death and survival on behalf of a non-viable fetus." See *McCaskill*, 615 A.2d at 384, (419 Pa. Super. 1992) (refusing to align with Rhode Island as the only state to recognize wrongful death for fetuses at any gestational stage).

In this case, despite inconsistent documents regarding clinical estimates of fetal gestational age at abortion, there is no definitive evidence indicating plaintiff reached 23 weeks. The fetal death certificate indicates gestational age to be 21 1/2 weeks at abortion. See defendant's motion, exhibit 2, fetal death certificate. Even presuming the fetal echocardiogram report provided a more accurate estimate at 22 1/2 weeks, plaintiff merely argues she "approximately" or "almost" or "would have" reached 23 weeks 3 days later. See plaintiff's response, pp. 4-5. Therefore, plaintiff cannot overcome the critical viability threshold because

288

she cannot prove the fetus actually reached 23 weeks.

Even if the fetus was viable, plaintiff's claims are barred by the applicable two-year statute, which commences at death. Plaintiff failed to file her complaint until November 27, 2007—more than six years after abortion. See defendant's motion, p.4. The death occurred on April 26, 2001. See defendant's motion, Exhibit 2, fetal death certificate. Thus the statute of limitations would have expired on April 26, 2003.

"There are exceptions that act to toll the running of a statute of limitations. The discovery rule and the doctrine of fraudulent concealment are such exceptions." See *Fine v. Checcio*, 582 Pa. 253, 266, 870 A.2d 850, 858 (2005). "The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury." *Id.* at 266-267, citing *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992). "Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." *Id.* at 268, citing *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 85, 468 A.2d 468, 471 (1983).

However, Pennsylvania law has held the "discovery rule...[does] not function so as to extend the period for filing wrongful death or survival actions." See *Molineux v.*

*Reed*, 516 Pa. 398, 402, 532 A.2d 792, 794 (1987). Here, plaintiff suffered a clear and immediately apparent injury — her son's death. Therefore, the statute commenced at death making the discovery rule inapplicable as a matter of law.

"Fraudulent concealment provides a defendant may not invoke the statute if, through fraud or concealment, it caused plaintiff to relax vigilance or deviate from her inquiry." See *Fine*, 582 Pa. at 271. "The doctrine does not require fraud in the strictest sense encompassing intent to deceive, but rather fraud in the broadest sense, including unintentional deception." *Id.* at 271. "Mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." See *Baselice v. Friars Assumption BVM Province*, 879 A.2d 270 (Pa. Super. 2005) citing *Kingston Coal Company v. Felton Min. Co., Inc.*, 456 Pa. Super. 270, 690 A.2d 284, 290 (Pa. Super. 1997) (internal quotation marks omitted). "Moreover, in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied." *Id.* "A statute of limitations tolled by fraudulent concealment commences when the injured party knows or reasonably should know her injury and its cause." See *Fine*, 582 Pa. at 272.

In the instant case, plaintiff has not shown defendant concealed information which prevented her from investigating what caused her son's death. Plaintiff does not allege any concealment beyond those encompassing general failure to warn. Paxil's public label as a

pregnancy category C drug prior to December 2005 does not constitute an affirmative act. Labeling Paxil a category C drug was "general systematic public conduct" and "is not an affirmative act directed at this specific plaintiff." See *Wilbourn v. Smithkline Beecham Corp.*, 2011 Phila. Ct. Com. Pl. LEXIS 351, 6 (Pa. C.P. 2011). GSK changed Paxil to a category D drug once additional medical studies were completed. This information was publicly available on GSK and FDA websites, as well as in a "dear doctor" letter sent to prescribing physicians. See GlaxoSmithKline, *Important Prescribing Information, December 2005, available at* http://www. fda.gov/downloads/Safety/MedWatch/SafetyInformation/ SafetyAlertsforHumanMedicalProducts/UCM164864. pdf (last visited on Oct. 12, 2012). See also U.S. food and drug administration, *FDA Advising of Risk of Birth Defects With Paxil, Agency Requiring Updated Product Labeling, December 8, 2005, available at* http://www.fda. gov/NewsEvents/Newsroom/PressAnnouncements/2005/ ucm108527.htm (last visited Oct. 12, 2012). Mere mistake or lack of knowledge is insufficient. See *Kingston*, 456 Pa. Super. at 283. Therefore, labeling Paxil a category C drug prior to December 2005 cannot constitute fraudulent concealment.

Plaintiff's alleged phone call to a GSK customer service representative on March 8, 2007, where she mistakenly learned Paxil was a category C drug, is irrelevant as the statute expired in 2003. See plaintiff's response, exhibit 2, affidavit of JoAnne Thomas. Moreover, plaintiff admitted the representative later corrected said mistake and informed her Paxil was a category D drug. *Id.* She also admitted prior to calling a click on GSK's website

revealed Paxil had been upgraded to category D. *Id.* Paxil was publicly upgraded from category C to category D in December 2005. See U.S. food and drug administration, *FDA Advising of Risk of Birth Defects With Paxil, Agency Requiring Updated Product Labeling, December 8, 2005, available at* http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/2005/ucm108527.htm (last visited Oct. 12, 2012). The alleged phone call did not take place until March 2007, almost six years after the abortion and 15 months after Paxil was relabeled. See defendant's reply, Exhibit 2, amended pregnancy fact sheet (12/9/10). Plaintiff must use all reasonable diligence to obtain facts and circumstances upon which recovery might be based. See *Pocono International*, 468 A.2d at 471. Plaintiff did not comply. Therefore, the phone call is a nonissue. Finally, plaintiff has failed to show an independent act of concealment upon which she relied. Thus, the doctrine of fraudulent concealment cannot apply.

In summation, Pennsylvania law follows a bright-line rule establishing the viability threshold at no less than 23 weeks. See *McCaskill*, 615 A.2d at 384 (419 Pa. Super. 1992). Plaintiff has failed to establish her pregnancy had reached that critical threshold. Nonetheless, even if we found viability, plaintiff's claims are barred by the statute of limitations. She immediately knew her injury, yet took no investigative action until March 2007, almost six years later. Despite plaintiff's assertions, she has failed to show any affirmative act of concealment upon which she relied to her detriment. Therefore, plaintiff has failed to meet her burden under the doctrine of fraudulent concealment and the two-year statute commenced at abortion.

## III. CONCLUSION

While we understand this case involves a fetus' death, we are constrained to follow the law in deciding any case before us. For the foregoing reasons, this court respectfully requests our order granting defendant's motion for summary judgment be affirmed.