478 A.2d 835

**Robert A. DEITRICK and Jane S. Deitrick, His Wife, Appellants,**

v.

**Ricky D. KARNES.**

Superior Court of Pennsylvania.

Argued Jan. 18, 1984.

Filed June 1, 1984.

Petition for Allowance of Appeal Denied Jan. 9, 1985.

Gailey C. Keller, Bloomsburg, for appellants.

David C. Dickson, Jr., Berwick, for appellee.

Before ROWLEY, HESTER and ROBERTS, JJ.

HESTER, Judge:

This appeal was taken from an Order of Court, dated May 24, 1982, denying appellants' motion for a new trial. Appellants allege that the jury verdict entered in their trespass action was inadequate. The jury returned a verdict in favor of appellant Robert A. Deitrick and against appellee Ricky D. Karnes in the amount of $500.00; however, no amount was awarded appellant Jane S. Deitrick pursuant to her claim for loss of consortium.

Appellants' trespass action arose from a boating accident in the Delaware Bay on May 20, 1980. Appellant Robert A. Deitrick, appellee Karnes and two other gentlemen, Steven Sitler and Terry Payne, travelled from their Pennsylvania residences to Deitrick's Delaware cottage on May 18, 1980 for a fishing vacation. At 7:30 a.m. on May 20th, the foursome left the cottage in appellee's sixteen-foot fiberglass motor boat for a fishing spot fourteen miles into the Delaware Bay.

At 1:00 p.m., following three and one-half hours of fishing, the men decided to return to Deitrick's cottage. Appellee operated the boat from the right front seat, and Deitrick sat alongside him. Sitler and Payne occupied the two rear-facing seats located directly behind the front seats.

Appellee was operating the boat at twenty miles per hour. That speed enabled the boat to reach a "planing" or a level position. All members of the fishing party agreed that the water surface was "very smooth".

Shortly after commencing their return trip, Deitrick observed three "rolls" in the water one hundred and fifty to two hundred yards in front of the boat and within its path. These "rolls" were created by the incoming tide striking a subsurface bank. The bank extended from a depth of thirty feet to a depth of one hundred feet. It was created by the excavation of a shipping lane in the bay. The "rolls" were unlike waves insofar as they were stationary at positions above the subsurface bank.

Deitrick requested that appellee stop the engine, but appellee did not hear. Deitrick repeated his request and gestured to gain appellee's attention. Appellee heard Deitrick; however, he did not reach the throttle in time to cut the engine prior to encountering the first "roll". The boat climbed to the top of the "roll" and plunged ten to twelve feet through an air space to the lower water level. This sudden and violent drop hurled Deitrick from his seat into the boat's canvas canopy. When the boat touched water again, Deitrick settled onto the floor, twisted around his seat. Although they were tossed about the boat just as violently, the other men were not seriously injured. Deitrick, however, suffered a fractured lumbar vertebra.

Appellants maintain that the five-hundred-dollar verdict entered on behalf of Robert Deitrick and the verdict denying compensation to Jane Deitrick for loss of consortium were grossly inadequate. We agree; therefore, the Order will be reversed and the case remanded for new trial on the issue of damages only.

The amount of the verdict is an issue for the jury; it will rarely be held inadequate on appeal. Our Pennsylvania Supreme Court, in *Elza v. Chovan*, 396 Pa. 112, 152 A.2d 238 (1959), commented on the scope of the jury's authority:

It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's. The mere fact that a verdict is low does not mean that it is inadequate. (citations omitted). *Id.*, 396 Pa. at 115, 152 A.2d at 240.

This Court in *Morris v. Peckyno*, 202 Pa.Super. 490, 198 A.2d 396 (1964), quoting 15 Am.Jur., Damages, § 231, refined the standard for reviewing an allegedly inadequate verdict:

As a rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more. *Id.*, 202 Pa.Superior Ct. at 492, 198 A.2d at 397.

Stated more familiarly, a jury verdict will not be set aside in the absence of clear error of law or palpable abuse of discretion. *Gagliano v. Ditzler*, 437 Pa. 230, 263 A.2d 319 (1970); *Rhodes v. Hollender*, 260 Pa.Super. 290, 393 A.2d 1268 (1978); *Gottlob v. Hillegas*, 195 Pa.Super. 453, 171 A.2d 868 (1961). Finally, we note that the *Elza* court set the standard of review in more graphic terms when it propounded that reversal on grounds of inadequacy of the verdict is appropriate only where "the injustice of the verdict (stands) forth like a beacon." *Elza v. Chovan*, 396 Pa. at 118, 152 A.2d at 241.

A review of decisions refusing to reverse a jury verdict on grounds of inadequacy will perhaps facilitate a more complete understanding of this narrow scope of judicial review. In *Bronchak v. Rebmann*, 263 Pa.Super. 136, 397 A.2d 438 (1979), the defendant was found negligent for driving his vehicle into the rear of the plaintiff's vehicle as the plaintiff was yielding to right-of-way traffic. The plaintiff complained of cervical strain resulting from the accident. Despite evidence that the plaintiff's physician diagnosed cervical strain, prescribed muscle relaxants and physiotherapy and opined that the accident left plaintiff permanently disabled, the jury returned a verdict for the plaintiff in the paltry amount of $63.30. That amount covered emergency room services administered on the day of the accident.

Although recognizing that the verdict of $63.30 was low, the *Bronchak* court would not reverse. Evidence of pre-existing calcium deposits and cervical arthritis was introduced, which the jury could reasonably conclude was more responsible for the plaintiff's neck pain than the accident. Consequently, the *Bronchak* court concluded that "a careful analysis of the evidence suggests that the verdict was within the bounds of logic and consistent with the law and evidence." *Id.*, 263 Pa.Superior Ct. at 138, 397 A.2d at 440.

Similarly, in *Jackson v. Capello*, 201 Pa.Super. 91, 191 A.2d 903 (1963), a jury verdict of $2,000.00, awarded to the plaintiff for a gunshot wound to his leg, was not inadequate in light of the speculative calculation of lost wages, the $681.65 in hospital expenses, and the possibility of a proper compromise verdict where the jurors could not agree on the question of contributory negligence.

Finally, in *Karcesky v. Laria*, 382 Pa. 227, 114 A.2d 150 (1955), a verdict of $5,000.00 was awarded to two pedestrians who were struck by an automobile. One pedestrian was hospitalized seventeen days for treatment to a fractured left clavicle and to severe contusions on his upper extremities. The other pedestrian suffered fractures to her teeth, sacrum, pelvis and left fibula. A lower back sprain

and hematoma of her left thigh were also apparent. Her treatment required seventy-five days of hospitalization. The verdict of $5,000.00 was recognized by the appellate court as a sympathy verdict to cover the plaintiffs' actual costs and to compensate, to a limited degree, the more seriously-injured plaintiff for her pain and suffering. In upholding the adequacy of the verdict, the *Karcesky* court accepted it as a compromise verdict based upon conflicting testimony on negligence.

■ Taken together, these cases hold that verdicts, seemingly low and unfair, are nevertheless adequate where the jurors reach an impasse over conflicting testimony on liability, contributory negligence or degree of injury.

■ Despite this reluctance of reviewing courts to take issue with the adequacy of jury verdicts, we are of the opinion that it must be done here. Therefore, we distinguish this case from *Bronchak, Jackson* and *Karcesky.*

On the evening of the accident, Mr. Deitrick was treated and released at Beebe Hospital in Lewes, Delaware. The ambulance service, hospital bill, and X-rays for the emergency treatment in Delaware totalled $109.50. On May 23, 1980, following Deitrick's arrival at his home in Benton, Columbia County, Pennsylvania, he was treated at the Veteran's Hospital in Wilkes-Barre, Pennsylvania. This treatment primarily involved another X-ray and being fitted with a corset. Due to the fact that the treatment at the Veteran's Administration Facility was rendered without cost to appellant, his medical expenses amounted to but $109.50. Inasmuch as the jury returned a verdict for $500.00 and found both parties to be 50% negligent, $445.25 was awarded for pain and suffering, inconvenience and/or loss of wages. Despite the jury's finding of comparative negligence, that amount is shockingly low. In our opinion the verdict was inadequate.

Evidence of pain and suffering was plentiful. Deitrick's vertebra was fractured upon impact with the floor of the boat. He was unable to sit for the return trip; instead, his

companions laid him on the floor and propped his head with a pillow. The vibration from the "planing" aggravated this pain; therefore, the boat speed was reduced. Upon reaching the shore, Deitrick could neither stand nor walk in order to leave the boat. With appellee's help, he crawled from the boat to the sand, and remained prone until the coast-guard paramedic team arrived. Shortly thereafter, a state police helicopter transported Deitrick to Beebe Hospital. Unable to walk, he was carried to and from the helicopter on a wooden stretcher.

Following his release, Deitrick was unable to walk. As a result, his fishing companions carried him to the car, and again from the car to the cottage. When he arrived at the cottage following the accident on May 20, 1980, Deitrick was immediately placed in bed. He remained in bed that evening, all day on May 21st, and again that evening, until the men began their return trip to home in late morning, May 22, 1980. During those hours in bed at the cottage, Deitrick slept at short intervals; the severe pain prevented lengthy and restful sleep.

Having returned home and following treatment at the Veteran's Hospital, Deitrick remained in bed for one week. Thereafter he was permitted to be up for an hour each day. Following one month, his time out of bed expanded to two or three hours each day. These long periods in bed prevented Deitrick from returning to work until mid-August. During this three-month period of convalescence, Deitrick suffered from severe pain. Once he returned to work, his work days did not surpass five hours. In fact, on the day of trial, nearly two years following the accident, Deitrick continued to suffer from discomfort to the extent that a full day's work was possible only two days per week. The remaining work days were abbreviated.

Deitrick's period of convalescence continued to the day of trial. Although treatment consisted mostly of rest, he was treated on three occasions at the Veteran's Hospital, given prescriptions for a muscle relaxant, and fitted with a corset. This evidence demonstrates that Deitrick endured a lengthy

and painful period of convalescence; therefore, the verdict does not adequately compensate him for his pain and suffering.

The verdict was also inadequate insofar as it granted an insufficient amount for Deitrick's loss of wages. His income and profit from his self-employment as a general contractor of pre-fabricated steel commercial buildings for five years provide sufficient evidence of the inadequacy of the verdict. For example, Deitrick incurred a loss of $1,731.00 in 1976; a loss of $377.00 in 1977; a profit of $2,469.00 in 1978; a gross income of $140,000.00 and a profit of $8,000.00 in 1979; a gross income of $39,650.00 and a profit of $3,000.00 for 1980, the year of the accident. Deitrick began his private business in 1976 following employment as a union construction worker. The early years' income was commensurate with a newly-founded business. Income rose steadily to its peak in 1979, the final complete tax year prior to the accident. However, it was significantly reduced in 1980. We recognize, of course, that the jury may have concluded that the low income in 1980 was not the result necessarily of Deitrick's injury. After all, economic conditions in certain industries were turning bleak. Nevertheless, no evidence of a faltering market for prefabricated steel buildings was introduced. For these reasons, the jury verdict was inadequate on loss of wages.

That portion of the verdict denying any amount for Jane Deitrick's loss of consortium is equally shocking and inadequate. Sufficient and incontroverted evidence was elicited which demonstrated that Jane Deitrick's right to Robert Deitrick's company, affection and cooperation was restricted. For example, Mrs. Deitrick was compelled to sleep on the divan in the livingroom for some time following the accident, due to her husband's continual moaning throughout the night. For two months following the accident, Mr. Deitrick was unable to perform routine domestic tasks such as mowing the lawn and dumping the garbage into the trash can. Not until July was he able to cook dinner and perform other light domestic chores. Deitrick's

inability to perform these chores was particularly significant since Jane Deitrick owned a gift and craft shop which required her attention for long hours every day. Prior to the accident, Robert Deitrick would assist Jane Deitrick at her shop with moving heavy equipment and re-arranging displays. Deitrick could offer no assistance to his wife either at the home or at her place of business for some time. Thereafter, his assistance at home and at her place of business was restricted to the date of trial.

This evidence of loss of consortium was uncontradicted. Appellee chose not to cross-examine Jane Deitrick or challenge her testimony in his case in chief. Therefore, the jury's disregard of this incontroverted evidence rendered the verdict inadequate to the extent that Mrs. Deitrick was denied any amount for loss of consortium.

In so holding, we find ourselves in conformity with those opinions which found verdicts inadequate. A wrongful death action verdict of $11,234.50 and a survival action verdict of $128,173.17 were held inadequate in view of uncontradicted actuarial testimony on decedent's lost earnings, lost pension, lost social security benefits, and value of services to his family. *Slaseman v. Myers*, 309 Pa.Super. 537, 455 A.2d 1213 (1983). A verdict in favor of the plaintiff with no financial recovery bore no "reasonable resemblance" to damages proved where the plaintiff was held not contributorily negligent, and where there was evidence of hospitalization, missed work, substantial medical expenses and lost wages. *Reid v. Oxendine*, 275 Pa.Super. 548, 419 A.2d 36 (1980). A verdict of no damages in a survival action was shocking where uncontested evidence of a fifty-year life expectancy and projected earnings resulted in proof of lost lifetime net earnings of $77,659.99. *Bortner v. Gladfelter*, 302 Pa.Super. 492, 448 A.2d 1386 (1982). As in *Slaseman*, *Reid* and *Bortner*, evidence of damages here was largely uncontested. Evidence of damages in *Blonchak*, *Jackson* and *Karcesky* was contradicted by the defense; therefore, the jury was justified, in determining credibility, in returning nominal damages.

In denying appellants' motion for a new trial, the lower court accepted the $500.00 verdict as an indication of the jurors' compromise on comparative negligence. This was so despite the jury's assessment, under the comparative negligence doctrine, of 50% causal negligence to each party. The lower court was of the opinion that "all of the reasoning which has supported the acceptance of compromised verdicts in contributory negligence cases is equally applicable to cases governed by comparative negligence principles."

Prior to Pennsylvania's enactment of the comparative negligence doctrine in 1976, 42 Pa.C.S. § 7102(a), compromise verdicts were frequently returned by juries which had considerable doubt concerning the defendant's liability. *Elza v. Chovan, supra; Robinson v. Brown,* 195 Pa.Super. 384, 171 A.2d 865 (1961); *Hilscher v. Ickinger,* 194 Pa.Super. 237, 166 A.2d 678 (1960), aff'd., 403 Pa. 596, 170 A.2d 595 (1961). These verdicts were upheld under the application of the contributory negligence doctrine. They were accepted as a just mechanism to assist the jury in issuing the most equitable verdict.

It is not necessary for us to decide whether compromise verdicts remain permissible under Pennsylvania's comparative negligence doctrine. We add, nevertheless, that a pure negligence doctrine, which reduces the plaintiff's damages by the amount attributed to his causal negligence, regardless of the degree of that negligence, would seem to eliminate the need for compromise verdicts. Conversely, Pennsylvania's comparative negligence doctrine reduces the plaintiff's damages in proportion to the amount of negligence for which he is responsible, providing the plaintiff's negligence is not greater than the defendant's causal negligence. In Pennsylvania, where the plaintiff is 51% or more causally-negligent, no recovery is permitted. To the extent that no recovery is permitted under Pennsylvania's comparative negligence doctrine, a compromise verdict may be apropos. Here, however, the verdict was not a compromise.

The jury found that 50% of the total causal negligence was attributable to appellee and 50% attributable to Mr. Deitrick. Having made this assessment, a refusal to award Jane Deitrick for loss of consortium where there was no evidence to the contrary, was so illogical and unreasonable as to shock our sense of justice. A verdict for no damages, then, is not a compromise. *Bortner v. Gladfelter, supra.*

The damages for pain and suffering, inconvenience and work loss awarded Deitrick, despite the fact that actual damages were diminished 50% to reflect his 50% causal negligence, are so inconsistent with the uncontradicted evidence that they amount to little more than the non-recovery for Mrs. Deitrick. Also, for this reason, the verdict cannot be considered a compromise.

The Order is reversed and the matter remanded for new trial on the issue of damages only. The issue of negligence was fairly determined. Furthermore, appellants do not question it on appeal, therefore, new trial will not cover the issue of negligence. See *Troncatti v. Smereczniak,* 428 Pa. 7, 235 A.2d 345 (1967).

Reversed and remanded for new trial on damages only. Jurisdiction relinquished.

ROWLEY, J., concurred in the result.