## Finney v. Nastacio

C.P. of Dauphin County, no. 3191 CV 2002.

*David H. Rosenberg,* for plaintiff.
*Richard Wix,* for defendant.

TURGEON, *J.,* August 10, 2004—George Finney Jr. was killed in an automobile accident April 20, 2001. His wife, plaintiff Carol Finney, as executrix of his estate and in her own right, brought wrongful death and survival actions. The case was tried before a jury, and because defendant Peter Nastacio admitted liability, the only issue was the amount of damages, which the jury determined to be $110,710. Plaintiff filed a timely motion for post-trial relief arguing that the verdict was inadequate and seeking a new trial. On June 3, 2004, I found that a new trial was warranted based upon the jury's award of zero damages in the wrongful death action, for Mr. Finney's family's loss of household services and loss of comfort, society, guidance and tutelage. I also held that the jury's award of zero damages in the survival action, for Mr. Finney's pain and suffering prior to his death, did not warrant a new trial. This opinion is written in support thereof. Pa.R.A.P. 1925(b).

## BACKGROUND

The relevant testimony concerning the issues raised in plaintiff's post-trial motion is as follows: On the afternoon of April 20, 2001, George Finney Jr., then a 75-year-old retired electrician on an errand to purchase lottery tickets, was stopped in traffic in the left lane of eastbound Route 22. While waiting to make a left turn, his vehicle was struck from behind by defendant's Jeep Wagoneer, traveling between 45 and 50 miles per hour. The force of the accident pushed Mr. Finney's vehicle

into the westbound lane where he was immediately struck by an oncoming Ford Bronco that caused Mr. Finney's car to spin and strike Nastacio's vehicle a second time. Mr. Finney was ejected from his car through the rear window of his vehicle and landed on the road in an unconscious state. He died shortly thereafter. (N.T. 22-25.) One eyewitness recalled that a paramedic who arrived on the scene within two minutes of the accident reported that Mr. Finney had a pulse. (N.T. 27.) Another eyewitness testified that Mr. Finney was unconscious immediately after the accident although he was "white and was moaning." (N.T. 124, 127.) Plaintiff's expert pathologist, Dr. Richard Callery, testified that he believed Mr. Finney experienced conscious pain and suffering prior to his death. (N.T. 216-17.) Dr. Callery stated that "[h]e was able to have a short period of conscious pain and suffering, although of short duration, manifested by movement, moaning and blood pressure before he died as a result of increased cranial pressure." (N.T. 219.)

At the time of his death, Mr. Finney resided in his West Hanover Township home with his three adult children, son Shawn, then 28 years old, and daughters Schenley, 25, and Lyndsay, 23. (N.T. 107, 152.) His wife Carol had moved out of the family home in 1991 but remained married to Mr. Finney and saw him every day. (N.T. 44-45, 81.) Until Mr. Finney's death, his children had lived their entire lives with him.

Shawn Finney testified that his dad "took care of everything," was very involved in his life, and that he "couldn't have asked for a better relationship"; Shawn misses his companionship and advice. (N.T. 131-32, 140-41.) Mr. Finney handled Shawn's bills, balanced his

checkbook, kept his records and would basically do anything asked of him. (N.T. 134.) According to Shawn, his father paid all their household expenses and kept up with the house maintenance like wiring, cleaning, mowing and keeping the family pool in shape. (N.T. 132, 137-38.) Mr. Finney did all of Shawn's laundry and cooked all his meals when he was home. (N.T. 133-34.) They would typically spend four or five hours together in the evening. (N.T. 139.) They spent time together shooting pool, doing yard work and home projects, tooling round with cars and occasionally playing golf. (N.T. 131-32, 138.) Although Shawn intended to one day move out, he was in no hurry and planned on living with his father for a long time. (N.T. 130.)

Schenley Finney described her father as her "hero," as "perfect" and as someone who could do anything. She testified that she could talk to her father about everything and he gave her advice, even as an adult. (N.T. 154, 158.) She summed him up as "the best father anybody could ever have." (N.T. 154.) She testified that he would do errands for her, get her up for work and that he did all the household work, except the daughters' laundry, including cooking and baking. (N.T. 154-56.) If she had time, she would go home over her lunch hour and eat with him and watch a soap opera. (N.T. 155.) She often spent evenings with him and her sister playing board and card games. (N.T. 156.) She was pregnant at the time her father died and testified that he had been very excited and had made plans for the baby. (N.T. 157.) Schenley, who got married in September 2002, greatly regretted that her father was not able to walk her down the aisle at her wedding nor meet his new grandson. (N.T. 159.)

Lyndsay Finney testified that her father meant the world to his children and they meant the same to him. (N.T. 52-53.) She described him as very supportive, providing her unconditional love and always teaching her right from wrong. She could talk to him about anything. (N.T. 45, 49, 51-52.) Regarding daily life, she testified that they "always did everything together" including shopping for groceries, playing pool and going to doctor's appointments. (N.T. 45, 49.) Her father would run errands for her like going to the bank or drug store, and also chauffeured her around. (N.T. 49, 51.) Mr. Finney paid all home expenses including electric, utilities, taxes, food and groceries and refused to accept money from his children when they offered to help. (N.T. 47, 49-50.) He was a very good cook and baker and would bring lunch and baked goods to her at her job, where she worked with her sister Schenley and their mother Carol. (N.T. 50-51.) She testified that he brought lunch to them almost every day and would sometimes stay and talk over the lunch hour. (N.T. 51.)

Carol Finney testified that she had married the decedent in 1973. Although separated in 1991, they still did many things together and she saw and talked to him every day. (N.T. 78, 81.) She testified that he paid all the household expenses for the home he shared with his children. (N.T. 86-90; plaintiff exhibit 5.) She believed his health was good and he had fully recovered from a heart attack and quadruple bypass surgery in 1998 as well as Guillain-Barre Syndrome in 1987 or 1988. (N.T. 90-92, 104.)

Plaintiff's expert economist, Dr. Andrew Verzilli, testified that based upon the fact that Mr. Finney had done all the cooking, cleaning and shopping in the household,

and in light of his life expectancy of 9.6 years, the value of his lost services to the household members ranged from $14,820 (assumed over a three-year period at 10 hours per week) to $59,280 (assumed over a six-year period at 20 hours per week). (N.T. 181-84.) Dr. Verzilli arrived at these figures using a replacement cost approach of $9.50 per hour.

Following the conclusion of trial, the jury returned its verdict awarding plaintiff $110,710. Significantly, the jury awarded the estate beneficiaries zero damages for lost value of household services and loss of comfort, society, guidance and tutelage, and zero to the estate for decedent's pain and suffering, as follows:

"*Jury Questionnaire*

"*Damages—wrongful death action*

"(1) State the amount of money damages to be awarded to the beneficiaries of the estate of George Finney Jr., for each of the categories listed below under the Wrongful Death Act. Then, please add up all the amounts entered and place that amount on the line marked 'Total.':

| | |
|---|---|
| "(A) Loss of value of household services: | $ 0 |
| "(B) Funeral/burial expenses: | $ 4,255 |
| "(C) Loss of his comfort, society, guidance, and tutelage: | $ 0 |
| "(D) Loss of financial support and contributions to family: | $ 37,259 |
| "Total: | $ 41,514 |

"*Damages—survival action*

"(2) State the amount of money damages to be awarded to the estate of George E. Finney Jr., for each of the cat-

egories below under the survival action. Then, please add up all amounts entered and place that amount on the line marked 'Total.':

"(A) Lost net retirement income:  $ 69,196

"(B) Mental & physical
pain & suffering  $  0

"Total:  $ 69,196

*"Summary of damages*

"(3) State the sum total of both the survival action and the wrongful death action above:

"Total compensatory damages:  $110,710"

## LEGAL DISCUSSION

Plaintiff argued that the jury rendered a verdict manifestly against the weight of the evidence and sought a new trial in the wrongful death action since the jury awarded zero damages to Mr. Finney's family, as the estate beneficiaries, for their loss of value of household services and their loss of comfort, society, guidance and tutelage. Plaintiff also sought a new trial in the survival action, arguing that the verdict was against the weight of the evidence where the jury awarded zero damages for the mental pain and suffering experienced by Mr. Finney prior to his death.[1]

---

1. Plaintiff asserted additional issues in her post-trial motion including the court's failure to include a requested jury instruction and to remove a juror for cause during voir dire. She failed to brief those issues, however, and as such, they have been waived. *Jackson v. Kassab,* 812 A.2d 1233, 1234 (Pa. Super. 2002) (en banc), *appeal denied,* 573 Pa. 694, 825 A.2d 1261 (2003) (any issues raised in a motion for post-trial relief that are not briefed may be considered waived by the trial court); accord, *Kraus v. Taylor,* 710 A.2d 1142 , 1146 (Pa. Super. 1998).

Before addressing the merits of plaintiff's post-trial motion, we address defendant's assertion that plaintiff has "waived her right to ask for a new trial by not objecting to problems with the verdict before the jury was dismissed." The record explicitly revealed otherwise. Immediately after the jury had announced its verdict, plaintiff's counsel stated as follows:

"Mr. Rosenberg: I don't know if this is the proper time but I am going to request additur to the verdict slip that it's not reflective of the damages represented or the judge consider judgment against the verdict, I guess.

"The Court: Okay. You could present that motion orally and then follow it up with a written motion but I wouldn't do it with the jury still here." (N.T. 256.)

After I excused the jury, counsel continued:

"Mr. Rosenberg: I am going to file a motion with the court for judgment n.o.v. and I confused the terms but to reconsider some of the elements where nothing was awarded. In this situation that is against the weight of the evidence in this case.

"The Court: Okay. Thank you.

"Mr. Wix [defense counsel]: I think this really is in the form of a post-trial motion which we will respond to but basically these were all jury issues. The jury considered them and made their decision. We believe that the jury verdict should be upheld.

"The Court: We will take it under advisement once it is filed. Thank you." (N.T. 257-58.)

Defendant noted that the plaintiff should have specifically requested that the court instruct the jury and return for further deliberations, citing *Curran v. Greate Bay Hotel and Casino,* 434 Pa. Super. 368, 643 A.2d 687

(1994). In light of my admonition to plaintiff's counsel that he could raise his objection after the jury was excused, there was no error in counsel's failure to request that the jury be called back to deliberate further.

With regard to the merits of plaintiff's motion, the law allows for the granting of a new trial where the verdict is against the weight of the evidence. *Thompson v. City of Philadelphia,* 507 Pa. 592, 597-98, 493 A.2d 669, 672 (1985). A jury verdict will be set aside as inadequate when it appears to have been the product of passion, prejudice, partiality or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. *Kiser v. Schulte,* 538 Pa. 219, 225, 648 A.2d 1, 4 (1994). A new trial is required when the jury's verdict is so contrary to the evidence so as to "shock one's sense of justice." *Id.* Inasmuch as the uncontradicted evidence showed that the award of zero damages in the wrongful death action—for loss of household services and for loss of comfort, society, guidance and tutelage—bore no reasonable relation to the loss suffered by the estate beneficiaries, a new trial was warranted. On the other hand, the jury's award of zero damages in the survival action for pain and suffering bore a reasonable relation to the evidence, and thus a new trial was unwarranted.

*Wrongful Death Damages: Loss of Household Services and Loss of Comfort, Society, Guidance and Tutelage*

"An action for wrongful death may be brought by the personal representative of those persons entitled to receive damages for wrongful death under the statute." *Kiser v. Schulte, supra* at 226, 648 A.2d at 4. (citations

omitted)[2] Wrongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent. *Id.* (citations omitted) The damages recoverable in a wrongful death action include the present value of the services the deceased would have rendered to the family, had he or she lived, as well as funeral and medical expenses. *Id.* (citations omitted)

---

2. The Wrongful Death Act provides as follows:

"Death action.

"(a) General Rule.—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

"(b) Beneficiaries.—Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

"(c) Special Damages.—In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

"(d) Action By Personal Representative.—If no person is eligible to recover damages under subsection (b), the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death." 42 Pa.C.S. §8301.

The "services" for which recovery is permitted include tangible items such as the lost value of household services as well as the lost contribution the decedent would have made to the family for the purchase of items such as shelter, food, clothing, medical care, education, entertainment, gifts and recreation. *Machado v. Gawlas,* 804 A.2d 1238, 1245 (Pa. Super. 2002), *appeal denied,* 572 Pa. 763, 819 A.2d 547 (2003) (citation omitted); *Walton v. Avco Corp.,* 383 Pa. Super. 518, 547, 557 A.2d 372, 388 (1989), *aff'd in part, rev'd in part on other grounds,* 530 Pa. 568, 610 A.2d 454 (1992). In addition, the spouse and child survivors are also entitled to be awarded damages for the intangible loss of services, which in the case of a surviving spouse are labeled loss of consortium, and in the case of surviving children are referred to as the "loss of companionship, comfort, society and guidance," or alternatively described as "loss of guidance, tutelage, and moral upbringing." [3] *Machado* at 1245 (citing *Walton* at 549-50, 557 A.2d at 388).

### i. Loss of Household Services

The jury's award of zero damages for the lost value of household services the decedent would have provided to his children, had he lived, was wholly contradicted by the evidence. The uncontroverted and credible evidence

---

3. This category of damages is also sometimes incorrectly labeled "loss of parental consortium." See *Machado* at 1244. It is notable that while children may recover for this category of damages occasioned by the death of their parent(s), there is no right by a parent for his or her similar loss due to the death of a child, referred to as "loss of filial consortium." *McCaskill v. Philadelphia Housing Authority,* 419 Pa. Super. 313, 318, 615 A.2d 382, 384-85 (1992); but see *Ehrman v. Mid-American Waste Systems of Pa. Inc.,* 39 D.&C.4th 235 (Allegheny Cty. 1998).

revealed that the decedent provided numerous specific household services for his children on a daily basis: Mr. Finney did all the cooking and baking in the household, kept up with home maintenance and took care of paying for all household expenses;[4] he did all of his son Shawn's laundry, balanced his checkbook and kept his records; he ran errands for his daughter Schenley, got her up for work and occasionally prepared lunch for her at home over her lunch hour; Mr. Finney ran errands for his youngest child Lyndsay, would chauffeur her around, often brought lunch to her and her sister and mother at work, shopped for groceries with her and traveled to doctor's appointments together. The jury's disregard of this evidence, that Mr. Finney provided extensive household services to his children, rendered its verdict of zero damages inadequate.

Defendant suggested at trial that Mr. Finney's life expectancy was not as long as the 9.6 years provided in the life expectancy tables, noting his quadruple bypass surgery in 1998, for example. Nevertheless, the jury clearly determined that Mr. Finney had some life expectancy and that all or some of his children would have continued to live in his house for some time into the future since it awarded the estate beneficiaries $37,259 in the wrongful death action for loss of financial support and contribution to the family. Thus, an award of zero damages for loss of household services was shocking and warranted a new trial.

---

4. We note the distinction between actually handling household finances and contributing money to household expenses. The former would be a household service and the latter actual financial support and contribution, for which the jury here did award damages to the estate's beneficiaries.

## ii. Loss of Comfort, Society, Guidance and Tutelage

The evidence was equally uncontroverted that Mr. Finney provided his children significant services in the form of comfort, society, guidance and tutelage. Prior his death, Mr. Finney doted on his children through their adulthood. He spent a significant amount of time with them, typically eating lunch with one or more of them and spending his evenings with his children partaking in numerous activities, including shooting pool with his son and playing board and card games with his daughters. Mr. Finney was variously described by his children as their hero, as perfect, and as the best father anybody could ever have. He meant the world to his children, was very supportive of them and provided them unconditional love. Mr. Finney's children could talk to him about anything and he continued to provide advice to them as adults. That the jury ignored this uncontroverted evidence and awarded zero damages was shocking.

The remedy of a new trial is proper where a jury awards zero damages in the face of uncontroverted evidence that the plaintiff has suffered damages. *Walton v. Avco Corp., supra* and *Deitrick v. Karnes,* 329 Pa. Super. 372, 478 A.2d 835 (1984). In *Walton,* the Superior Court upheld trial court's grant of a new trial limited to wrongful death damages for wife's loss of household services and loss of consortium, occasioned by her husband's death, where the jury had otherwise awarded the surviving children damages for their intangible losses. *Id.* at 549-50, 557 A.2d at 388. In *Deitrick,* the Superior Court reversed the trial court's denial of a new trial where, among other findings, the jury had awarded zero damages for a wife's loss of consortium claim in a non-death personal injury

action. The Superior Court found that the zero damages were inadequate and a new trial warranted where there was uncontradicted evidence that the wife's right to the company, affection and cooperation of her husband had been restricted by his back injury, a result of defendant's negligence. *Id.* at 831, 478 A.2d at 839.

Defendant has argued that the zero damage awards in the wrongful death action were reasonable in light of the evidence that the decedent and his wife had lived apart for some time prior to his death, and that she was collecting $6,720 per year from his pension. Defendant also claims the verdict was adequate since his children were all adults independently employed.

This court agrees with the defendant that to the extent the jury's decision to award zero damages for Carol Finney's loss of household services and loss of comfort, society, guidance and tutelage (*i.e.,* loss of consortium), was supported by the evidence: Mrs. Finney has been living separate from her husband since 1991. However, the two categories in the jury questionnaire (for wrongful death) for which the jury chose to award zero damages clearly indicated that they were to be awarded to the beneficiaries of the estate. This court's jury instructions clearly identified the beneficiaries as Mr. Finney's "family" or "children." (N.T. 238-39.) Thus, the fact that the jury may have decided to award zero damages to Mrs. Finney cannot explain its decision to do the same to the children.

Additionally, as to the issue of damages for lost value of household services and loss of comfort, society, guidance and tutelage, it is irrelevant that the decedent's children were independently employed adults at the time of Mr. Finney's death. Under Pennsylvania law, persons with a family relation to the deceased are entitled to recover

under the wrongful death statute, so long as they have suffered a pecuniary loss. *Gaydos v. Domabyl,* 301 Pa. 523, 529, 152 A. 549, 551-52 (1930); *Berry v. Titus,* 346 Pa. Super. 376, 381, 499 A.2d 661, 664 (1985); *Manning v. Capelli,* 270 Pa. Super. 207, 211, 411 A.2d 252, 255-56 (1979) (a beneficiary under the Act must prove a family relationship and pecuniary loss). Since the Act specifically includes children as a category of beneficiaries, the polestar for recovery is whether the child-beneficiary is able to prove pecuniary loss. Emancipated children have long been eligible to recover damages for the wrongful death of their parent where they have suffered such a loss. As stated by the court in *Gaydos:*

"Family relation, as understood by the [Wrongful Death] Act, exists between parent and child when a child receives from a parent services or maintenance or gifts with such reasonable frequency as to lead to an expectation of future enjoyment of these services, maintenance, or gifts. The term 'family relation' as thus used does not embrace its comprehensive definition, but is confined to certain phases of family relation between the persons named in the Act. As the term 'family relation' is understood under the Act, those affected by such death need not reside at the same home or under the same roof as the deceased. They may reside elsewhere and still be within the family relation: .... Before there can be any recovery in damages by one in that relation for the negligent death of another in the same relation, there must be a pecuniary loss: ....

"Pecuniary loss has been defined to be a destruction of a reasonable expectation of pecuniary advantage from the deceased. It is not a matter of guess or conjecture, but must be grounded on reasonably continuous past acts or conduct of the deceased: ....

"The reasonable expectation of pecuniary advantage to one standing in the family relation may be shown in many ways, but more frequently through services, food, clothing, education, entertainment and gifts bestowed; to be reasonable, the services and gifts must have been rendered with a frequency that begets an anticipation of their continuance; occasional gifts and services are not sufficient on which to ground a pecuniary loss. [citations omitted] . . .

"The adults over age who lived at home, contributed all their earnings and received clothing, food, spending money and the mother's services; the value of all these, less their contributions to the mother, would be the measure under the rule above.

"These adult children might reasonably expect to receive from their mother the same shelter, care, attention and service until her death as each had been given before; now that she is gone, the services cannot be secured altogether from paid help. . . .

"Appellant is laboring under the impression that 21 years of age is the dividing line in the statute beyond which children cannot recover for loss of services. He forgets that the family relation is the basis of the recovery of damages, and that this may continue beyond that period; damages are measured by the pecuniary loss, based on past conduct and acts of the deceased in that relation. It is quite true that defendant may show a case where no loss has been made out, but ordinarily the question is for the jury, and not one for binding instructions." *Id.* at 529-30, 536, 537, 152 A.2d at 551-52, 554 (1930).

Thus, it is irrelevant that the Finney children were adults or independently employed at the time of their

father's death; what is relevant, however, was that Mr. Finney rendered household services and comfort, society, guidance and tutelage to them "with a frequency that begets an anticipation of their continuance" and with a reasonable expectation that "[t]hese adult children might reasonably expect to receive from their [father] the same shelter, care, attention and service until [his] death as each had been given before." *Id.*

### Survival Action Damages: Pain and Suffering

Plaintiff had argued that a new trial was warranted in the survival action because the jury ignored uncontroverted testimony that the decedent experienced pain and suffering prior to his death. As noted, plaintiff's expert Dr. Callery testified that Mr. Finney was able to experience a period of conscious pain and suffering, although of short duration, prior to his death.[5]

Nevertheless, the jury's decision to disregard that evidence was not shocking in light of the evidence that the decedent was thrown from his car and rendered immediately unconscious. Furthermore, the plaintiff presented no evidence of how long Mr. Finney lived following the accident except that it was of a short duration. Thus, the jury could have reasonably concluded that Mr. Finney did not suffer compensable pain and suffering.

Accordingly, this court issued an order June 3, 2004, granting in part plaintiff's motion for post-trial relief.

---

5. We note that absent expert testimony, there can be no recovery for pain and suffering in a survival action for the period between the time of injury and the time of death, where the decedent is unconscious for the duration. *Cominsky v. Donovan,* 846 A.2d 1256, 1260 (Pa. Super. 2004) (citing *Nye v. PennDOT,* 331 Pa. Super. 209, 214, 480 A.2d 318, 321 (1984)).