J-A22012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMBER SHOOK AND MICHAEL O'DONNELL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEHIGH VALLEY RESTAURANT GROUP, INC. D/B/A RED ROBIN GOURMET BURGERS AND BREWS | : | No. 364 EDA 2025 |
| Appellant | : | |

Appeal from the Order Entered January 15, 2025
In the Court of Common Pleas of Chester County Civil Division at No(s):
2021-01491-TT

BEFORE:   LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED JANUARY 22, 2026**

Lehigh Valley Restaurant Group, Inc. d/b/a/ Red Robin Gourmet Burgers and Brews (Red Robin) appeals from the order, entered in the Court of Common Pleas of Chester County, granting Amber Shook and Michael O'Donnell's motion for a new trial on damages in this personal injury case. After careful review, we vacate and remand.

On April 13, 2019, Shook slipped and fell in a Red Robin restaurant in Exton, Chester County.  Shook suffered a fractured right elbow.  On March 8, 2021, Shook commenced an action against Red Robin, alleging negligence in failing to maintain the interior floors, which caused her to slip and fall.  She sought non-economic damages only, for past and future pain and suffering,

_____

[*] Former Justice specially assigned to the Superior Court.

embarrassment, humiliation, and inability to enjoy life's pleasures.  Red Robin

denied liability.  Red Robin alleged that Shook was negligent in failing to take

note of a "wet floor" caution sign placed by restaurant employees in the area

where she fell.  Red Robin also disputed the extent of Shook's injury.[1]

On February 8, 2023, the case was tried before a jury, the Honorable

Jeffrey R. Sommer presiding.  In a prior opinion, this Court set forth the

relevant procedural facts:

> Shook presented two expert medical witnesses who testified about
> the nature and extent of her injuries.  The evidence at trial also
> established that: (1) [] Shook's treating physician recommended
> physical therapy, but [] Shook did not follow that
> recommendation; (2) [Shook] had not obtained treatment for her
> injury in the three years prior to trial; (3) a week after the
> accident, [] Shook vacationed with her family at a beach resort;
> (4) [Shook] did not miss any time from work as a result of the
> accident; and (5) the accident did not have any impact on []
> Shook's job.
>
> After the jury began deliberating, it became deadlocked.  The trial
> court then gave the jury the "deadlocked jury" instruction and the
> jury resumed deliberating.  It eventually returned to the

---

[1] Shook was diagnosed with a right radial head fracture of the elbow.
According to her own expert, she suffered a "minimally displaced intra-
articular right elbow radial head fracture."  **See** Deposition, Kelly Murray,
M.D., 1/31/23, at 31, 42.  As noted, **infra**, Raymond E. Dahl, D.O., who
performed the independent medical examination in April 2022, two years after
the accident, characterized the fracture as "non[-]displaced."  **See** Dahl IME,
4/6/22,            Defense            Exhibit            B,            at            4.
"Non-displaced fractures are still broken bones, but the pieces weren't moved
far    enough    during    the    break    to    be    out    of    alignment."
https://my.clevelandclinic.org/health/diseases/15241-bone-fractures     (last
visited 12/15/25).  A non-displaced fracture is also known as a "stable fracture
[where t]he broken ends of the bone line up and are barely out of place."
https://orthoinfo.aaos.org/en/diseases--conditions/fractures-broken-bones/
(last visited 12/18/25).

courtroom and attempted to deliver a verdict that apportioned 70% of liability to Red Robin and 30% to [] Shook and awarded [] Shook $0 damages. Upon reading the verdict sheet to himself, but not aloud in court, the trial judge rejected the proposed verdict and instructed the jury that it needed to award some damages to [] Shook. No party objected to the jury instruction. Shortly thereafter, the jury returned with the verdict slip noting an award in [] Shook's favor of $1,000.

Following the verdict, [] Shook filed a motion for additur or a new trial on damages only. At a hearing on the motion, however, [] Shook advised the court that she was proceeding only with her request for a new trial on damages because the jury's award of $1,000 was against the weight of the evidence. Importantly, [] Shook did not assert that the trial court had erred in providing the jury with an additional instruction that it must award her some damages.

After considering the parties' arguments and briefs, the trial court entered an order vacating the damages award of $1,000, purportedly reinstating the $0 damages verdict, and ordering a new trial limited to the issue of damages. The trial court explained that it determined that awarding a new trial was appropriate because it had erred in ordering the jury to resume deliberations to award [] Shook damages for pain and suffering. It further explained that the reinstated award of $0 damages was against the weight of the evidence.

*Shook v. Lehigh Valley Restaurant Group, Inc.*, 313 A.3d 1108, 1110 (Pa. Super. 2024).

Red Robin appealed, and this Court reversed, finding: (1) the trial court abused its discretion in awarding a new trial on damages because Shook did not raise this purported error as a ground for relief in her post-trial motion, *see* Pa.R.C.P. 227.1(b)(1)-(2); and (2) the trial court erred in reinstating the $0 damages award because that verdict was never announced in open court. *See Drum v. Shaull Equipment and Supply Co.*, 787 A.2d 1050, 1057 (Pa. Super. 2001) ("[It] is well-settled that jury verdicts must be announced in

- 3 -

open court and in the presence of the parties and their counsel in order to be valid."). We concluded, therefore, that since the trial court abused its discretion in granting Shook's post-trial motion on grounds she did not raise, erroneously reinstating a damages award of $0, and then determining that that award was against the weight of the evidence, "the issue actually raised by Shook in her post-trial motion, i.e., whether the jury's verdict of $1,000 is against the weight of the evidence," remained unresolved. *Shook*, 313 A.3d at 1112. We, therefore, reversed and remanded for the trial court to consider whether the jury's $1,000 verdict was against the weight of the evidence. *Id.*

On remand, the case was reassigned to the Honorable Anthony T. Verwey, as Judge Sommer had retired from the bench prior to disposition of Shook's post-trial motion. Judge Verwey granted Shook's post-trial motion and ordered a new trial on damages only. Red Robin filed the instant appeal. Both Red Robin and the trial court have compiled with Pa.R.A.P. 1925.

Red Robin raises the following issues for review:

1. Did the post-trial court erroneously grant Shook's motion for a new trial, because the $1,000 verdict does not shock the conscience?

2. Alternatively, did the post-trial court erroneously grant a new trial limited to damages[,] even though the jury's verdict represents a permissible compromise such that its determinations on liability and damages were inseparably intertwined, and the liability determination was not free of doubt?

Appellant's Brief, at 7.

- 4 -

We have held that the decision whether to grant a new trial on weight of the evidence grounds rests within the discretion of the trial court and that decision will not be disturbed absent an abuse of discretion. An abuse of discretion occurs when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias[,] or ill will. Furthermore, a new trial based upon a weight of the evidence claim should be granted to a party:

> **only where the verdict is so contrary to the evidence as to shock one's sense of justice [and not] where the evidence is conflicting [or] where the trial judge would have reached a different conclusion on the same facts.**

> We have held that it is the duty of the trial court to control the amount of the verdict; it is in possession of all the facts as well as the atmosphere of the case, which will enable it to do more evenhanded justice between the parties than can an appellate court. Thus, a jury verdict is set aside for inadequacy when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. **Hence, a reversal on grounds of inadequacy of the verdict is appropriate only where the injustice of the verdict stands forth like a beacon.**

*Womack v. Crowley*, 877 A.2d 1279, 1282-83 (Pa. Super. 2005) (internal citations and quotations omitted) (quoting *Davis v. Mullen*, 773 A.2d 764, 766 (Pa. 2001)) (emphases added). See also *Neison v. Hines*, 653 A.2d 634, 636 (Pa. 1995); *Lombardo v. DeLeon*, 828 A.2d 372, 375 (Pa. Super. 2003). Moreover, "[w]here the trial court *grants* a new trial on the ground of inadequacy[,] the appellate courts will not interfere in the absence of a gross abuse of discretion." *Beswick v. Maguire*, 748 A.2d 701, 702 (Pa. Super.

2000) (quoting **Paustenbaugh v. Ward Baking Co.**, 97 A.2d 816, 818 (Pa. 1953)) (emphasis in **Paustenbaugh**).

Additionally, the trial judge's authority to award a new trial on weight-of-the-evidence grounds is narrowly circumscribed because the jury, not the trial judge, determines witness credibility and evidentiary weight. **See Criswell v. King**, 834 A.2d 505, 512 (Pa. 2003). **See also Com., Dept. of General Services v. U.S. Mineral Products Co.**, 956 A.2d 967, 974 (Pa. 2008) (explaining that "[a] trial judge cannot grant a new trial 'because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion'"). This "obvious tension" between a jury's prerogative and a trial judge's ability to grant a new trial requires that the judicial conscience be "not merely disappointed, or uncomfortable, but `shocked.'" **Criswell**, **supra** at 513 (citing **Armbruster v. Horowitz**, 813 A.2d 698, 704 (Pa. 2002).

We emphasize that, in this case, it was the post-trial judge who determined that the $1,000 verdict "shocked the conscience," despite the fact that he had not presided at trial and that he also made this determination on a cold record. Although the post-trial judge was not prohibited from making this finding, it imposes significant limitations since, generally, we rely on a judge's firsthand observations of evidence and witness demeanor. **See Armbruster**, 813 A.2d at 703 ("Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon the cold record."). Thus, in

performing our review, we bear in mind that the post-trial motion judge here acted in a reviewing role—similar to ours—restricted to a cold record.

Red Robin argues that the jury's verdict did not "shock the conscience" of the court because: (1) Shook's medical treatment was minor, and she sought only non-economic damages; (2) Red Robin vigorously litigated the issue of liability and the jury found Shook comparatively at fault; and (3) Shook failed to mitigate her damages by disregarding her doctor's recommendation to undergo physical therapy. *See* Appellant's Brief, at 24. The record supports these arguments, and we agree with each of Red Robin's contentions.

The case of ***Dawson v. Fowler*** 558 A.2d 565 (Pa. Super. 1989), is instructive. There, following a motorcycle-vehicle collision, Dawson, the motorcyclist, sustained foot and toe injuries. Dawson sued the driver of the vehicle, Fowler, to recover damages for lost wages, pain and suffering, and medical expenses. ***Id.*** at 566. At trial, Dawson presented evidence of pain and suffering, $382.25 in medical bills, and $1,450.00 in lost wages. ***Id.*** The jury ultimately returned a verdict in Dawson's favor for $382.25, along with a finding that each party had been 50% negligent. ***Id.*** Dawson filed a motion for a new trial, on the basis that the jury's verdict did not account for lost wages and pain suffered; the trial court denied the motion. ***Id.*** On appeal, this Court affirmed, stating:

> The amount of a jury verdict will rarely be held inadequate on appeal. **Moreover, we emphasize that it is the province of the jury to assess the evidence and to accept or reject**

- 7 -

**conflicting testimony given by witnesses.** Even if testimony is uncontradicted, the jury is not required to accept everything or anything a party presents. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for that of the jury.

*Id.* at 567 (citations and quotations omitted) (emphasis added).

Furthermore, we stated that

**seemingly low and unfair jury verdicts are nevertheless adequate when the jurors are presented with conflicting testimony on liability, contributory negligence, or degree of injury.** Instantly, liability was contested. Moreover, regarding [Dawson's] request for lost wages and pain suffered, our scrutiny of the record reflects that the degree of [Dawson's] injury, and any resultant pain and suffering, were subject to question. Following the accident, [Dawson] was treated for "some sort of fracture of the left great toe" and released, and subsequently experienced "uncomfortable pain in [his] heel and [his] lower left ankle." At the time of the accident, [Dawson] had been working in a temporary position for approximately two weeks. He returned to work after two weeks and did not miss any more time as a result of his injuries. The trial court aptly opined:

> In the instant case, the issue of liability was vigorously contested. There was conflicting testimony between the parties. The jury was presented with inconsistent evidence and the amount of its award of damages reflects a compromise verdict. **The granting of a new trial in this case limited to the issue of damages would amount to an abuse of discretion.**

*Id*. at 567 (citing *Deitrick v. Karnes*, 478 A.2d 835 (Pa. Super. 1984)) (citations omitted; emphasis added). *See Guidry v. Johns–Manville Corporation*, 547 A.2d 382 (Pa. Super. 1988) (low verdict in product liability action on behalf of deceased asbestosis sufferer did not warrant new trial where there was conflicting evidence as to cause of death; nominal award could be explained as permissible compromise verdict).

In the instant case, as in *Dawson*, liability was vigorously contested. The parties presented conflicting testimony on liability, contributory negligence, and, relevant here, the extent of Shook's injury and claims of pain and suffering. Additionally, the jury's verdict in this case bore all of the hallmarks of a compromise verdict, which included a "significant finding of comparative fault" coupled with a somewhat insubstantial damages award. *See* Appellant's Brief, at 26. When a defendant contests liability, and the jury hears conflicting evidence, "compromise verdicts are permissible." *See Carlson v. Bubash*, 639 A.2d 458, 460 (Pa. Super. 1994). *See also Matheny v. West Shore Country Club*, 648 A.2d 24 (Pa. Super. 1994).

It is telling that Shook sought only non-economic damages, that she took no medication for her pain, that her injury interfered with neither her job nor a family vacation, and that she did not do all she could to mitigate her damages, disregarding her treating physician's recommendation of physical therapy. At trial, Shook admitted that, on three occasions, her treating doctor referred her to physical therapy, but she never went. *See* N.T. Jury Trial, 2/8/23, at 23, 49, 51, 54-55.

The jury also heard Shook admit that this injury had a minimal impact on her life. Shook's treatment consisted of an urgent care visit and four office visits with Eric Zabat, M.D., her treating physician, over a 10-month period. *Id.* at 43-44. Shook had not treated for this accident in the three years prior to trial. *Id.* at 46. The week after the accident, Shook vacationed with her family. *Id.* at 58. Shook did not miss any work in connection with this

- 9 -

accident and conceded that it did not have "any impact on her job." ***Id.*** at 56-57, 73. Further, the jury heard, over Shook's objection, that she only incurred $93.40 in out-of-pocket expenses and that she was "not asking the jury to contemplate any out-of-pocket [or] medical expenses." ***Id.*** at 45. Moreover, the jury was free to infer, from Shook's admitted failure to go to physical therapy, that she did not deem her injuries so significant that it merited rearranging her family and/or professional schedule in order to accommodate physical therapy. ***See id.*** at 23, 49, 51, 54-55 (Shook admitting she did not go to physical therapy and that her "job and family did not allow that kind of time").

Raymond E. Dahl, D.O., who saw Shook for an independent medical examination (IME), stated the following diagnosis in his April 6, 2022 report: "Resolved closed intra[-]articular **non[-]displaced**[2] right elbow radial head fracture." Dahl IME, 4/6/22, Defense Exhibit B, at 4 (emphasis added). Additionally, Dr. Dahl stated:

> [] Shook is a 46-year-old, left-hand dominant, Caucasian female who, in my professional opinion within a reasonable degree of medical certainty[,] incurred slip and fall injuries as previously stated above. Ms. Shook clearly did not demonstrate any clinical objective evidence of ongoing radial head fracture involving her right elbow. She was noted to have full flexion, full extension, as well as full supination and pronation of the elbow. In comparing the right elbow to the left, the left elbow does hyperextend 10-15 degrees compared to the right elbow. The treatment that Ms. Shook received has been reasonable, necessar[]y, and causally related to the slip and fall of April 13, 2019.

_____

[2] ***See supra***, n.1.

- 10 -

Typically, a nondisplaced radial head fracture is treated with a very short course of immobilization, typically seven to ten days, followed by early range of motion. A well-known ten[et] in treating radial head fractures is that you must be aware of elbow stiffness with prolonged remobilization. I personally warn patients at the first visit that they are going to have to work on rotation of the forearm (supination) as well as getting the elbow fully straight because this type of fracture is prone to loss of elbow range of motion.

\* \* \*

I do believe that Ms. Shook has made a full and complete recovery with regard to the right elbow radial head fracture. I do feel Ms. Shook would have benefitted from physical therapy and I do believe if she would have gone to physical therapy, she would more likely than not have lost any range of motion of the elbow. What little range of motion Ms. Shook has lost with terminal extension is not anything that would affect her with regard to her activities of daily living as well as leisure activities. **With regard to the right elbow radial head fracture, there is no long-term sequela that is expected. Ms. Shook is not at risk for developing post[-]traumatic arthritis involving the right elbow and this was a non[-]displaced fracture, really only able to be seen on one view. It is my professional opinion[,] within a reasonable degree of medical certainty[,] that Ms. Shook has made a full and complete recovery.**

*Id.* at 4-5 (emphasis added). Doctor Dahl also noted: "[N]o pain with resisted wrist flexion. No pain with resisted wrist extension. No pain with resisted elbow flexion. No pain with resisted elbow extension. No pain with resisted pronation. No pain with resisted supination[.]" *Id.*

Kelly Murray, M.D., Shook's expert, also performed an IME on September 9, 2022. In her report, Dr. Murray reviewed Shook's treatment history with Eric Zabat, M.D., and stated that upon examination, Shook "has

decreased range of motion involving her right elbow[,] [and] is at increased risk for the development of post-traumatic arthritis in her right elbow." Murray IME, 9/2/22, at 2-4 (unpaginated), Plaintiff Exhibit 8. Additionally, in her deposition, Dr. Murray stated that the fracture involved "some displacement." *See* Deposition, Kelly Murray, M.D., 1/31/23, at 23. *See also id.* at 31 (Doctor Murray stating Shook "suffered a *minimally displaced* intra-articular right elbow radial head fracture") (emphasis added).

Doctor Murray also acknowledged that Shook's four appointments with Dr. Zabat showed steady improvement and, at the third appointment, no pain:

Q: In this record of June 3, 2019[, Dr. Zabat] doesn't record any pain that she's suffering upon his physical exam in connection with that, right?

A: Correct. She is better at this point.

Q: So you would think a reasonably competent physician would be looking for pain in the areas of injury, right?

A: Sure.

Q: And he didn't identify any pain in the areas of injury, did he?

A: At this exam, no.

*Id.* at 56. *See also id.* at 44-47, 55, 63-65 (Doctor Murray acknowledging Dr. Zabat's May 13, 2019 examination, one month post-accident, indicated "no pain" under Functional Testing, and acknowledging Dr. Zabat repeatedly put Shook through battery of tests designed to elicit pain response, but tests found no pain one month after accident, in May 2019, two months afterwards, in June 2019, and ten months afterwards, in February 2020); *id.* at 65 (Doctor

Murray acknowledging she put Shook through same functional tests during IME and results were the same as Dr. Dahl's IME and that Shook had "no pain in any of those areas"); *id.* at 67-68 (Doctor Murray acknowledging that Shook admitted to her that she never pursued physical therapy despite Dr. Zabat's recommending such three times).

Here, as in **Dawson**, the jurors were presented with conflicting testimony on liability and contributory negligence, and, significantly, the degree of injury and pain and suffering. Regarding Shook's claims of pain suffered, our review of the record demonstrates that the degree of Shook's injury, in particular the level of displacement and the resultant pain and suffering, were questionable. Thus, we are not persuaded that there has been an evident failure of justice such that the award should not be permitted to stand. **See Nudelman v. Gilbride**, 67 A.2d 233, 237 (Pa. Super. 1994) (new trial should not be granted because of mere conflict in testimony or because trial judge on same facts would have arrived at different conclusion).

The post-trial court's rationale was that the verdict was inadequate. We disagree. Simply put, the jury did not believe evidence of non-economic damages in excess of what it awarded. It is not for any reviewing court to dictate what evidence a jury must believe. **See Catalano v. Bujak**, 642 A.2d 448, 451 (Pa. 1994). Jurors are not required to "believe that every injury causes pain **or the pain alleged**." **Davis v. Mullen**, 773 A.2d. 764, 768 (Pa. 2001) (emphasis added) (citing **Boggavarapu v. Ponist**, 542 A.2d 516, 518 (Pa. 1988)). The jury made its determinations, and it is not for this Court,

- 13 -

"absent evidence of unfairness, mistake, partiality, prejudice, corruption, exorbitance, excessiveness, or a result that is offensive to the conscience and judgment of the court, to disturb them." **Catalano**, 642 A.2d at 451. Clearly, this is not a case where the jury disregarded uncontradicted evidence. **Cf. Nykiel v. Heyl**, 838 A.2d 808 (Pa. Super. 2003) (despite uncontradicted evidence plaintiff suffered broken leg, jury awarded $0 in damages).

Though the verdict may "raise an eyebrow," after our review, we conclude that the post-trial motion judge abused his discretion in finding the verdict "shocked one's sense of justice." **Neison**, 653 A.2d at 636. **See also Kiser v. Schulte**, 648 A.2d 1, 4 (Pa. 1994). The jury considered all of the evidence and testimony, and it has spoken as to the amount of damages. Neither the post-trial court nor this Court, exercising restraint and respecting the judgment of the jury, should interfere. Accordingly, the trial court's order is vacated, and the jury's verdict in favor of Shook in the amount of $1,000 is reinstated.

Order vacated. Case remanded for reinstatement of verdict. Jurisdiction relinquished.[3]

_____

[3] We need not reach the question of whether the case should be remanded for a new trial on damages only or on damages and liability together, because the initial inquiry, whether the post-trial judge abused his discretion in granting a new trial based on an inadequate verdict, has been answered in the affirmative. **Cf. Gagliano v. Ditzler**, 263 A.2d 319 (Pa. 1970).

- 14 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>1/22/2026</u>